WORTHY ET AL. vs. LYON ET AL.

1. Where administration has been rightfully granted and is still pending in another State, a court of chancery here, although it may entertain a bill *quia timet* to prevent the destruction of assets of the estate that have been brought within its jurisdiction, will not proceed at the instance of the distributees to a final settlement of the administration, but will remit them for that purpose to the tribunal, which has first taken cognizance of the cause.

.ERROR to the Chancery Court of Chambers. Tried before the Hon. W. W. Mason.

BROCK and RICE, for the plaintiffs in error.

No counsel for the defendants.

CHILTON, J.—The object of this bill is to recover a negro slave, named Isaac, from Lyon, one of the defendants, who has him in possession in the county of Chambers. The complainants aver that they are entitled to him under the will of their father, Thomas Worthy, who died in Troup county, in the State of Georgia, and whose will was proved in the Court of Ordinary of said county, upon the application of Jane Worthy and one Robison, who were thereby appointed executrix and executor thereof; and were qualified as such. It is avered in the bill that these parties, Jane Worthy and Robison, "fraudulently used, mismanaged and squandered the estate," and that they fraudulently and with the intention of defeating the rights of the complainants, procured an order of sale to be made by said Court of Ordinary, a copy of which is exhibited in the bill, of all the real and personal estate belonging to the said testator; that the sale under the said order was fraudulent, irregular and void, because in contravention of the laws of the State of Georgia; that the said Jane and Robison gave no bond for the performance of their duties as executrix and executor of said will, and are insolvent; that one of them resides in Troup county, Georgia, the other in Mississippi; that the will devotes the testator's property, first to the payment of his debts, and then bequeathes a carriage and horses to Jane, the widow, and the

remainder of the property, both real and personal, to be equally divided between the complainants and said Jane. Complainants charge, on information and belief, that there are no valid debts against said estate, or if there are, they are inconsiderable.

The chancellor dismissed the bill, and considered that it was wanting in equity. For the plaintiffs in error, it is insisted that this decree is erroneous.

Had the Chancery Court any jurisdiction of the case made by the bill? If it had not, it is quite immaterial whether the sale of the slave in Georgia was fair and legal, or fraudulent and void. We are refered to the case of Calhoun, by his next friend, v. King, 5 Ala. 523, as an authority in support of the jurisdiction. In that case the interference of the Court of Chancery in this State was predicated upon the ground of the imminent danger, in which the fund was placed, of being destroyed. The jurisdiction was maintained as a bill *quia timet*. Besides, the parties lived here, the estate was here, and both the estate and the distributees had been brought to this State by the administrator. Now, I think it is a clear proposition, that the court of equity may in such case interpose to prevent the destruction of the trust fund, at the instance of those beneficially interested, and thus far the case of Calhoun v. King, is good law; but to hold that having taken jurisdiction for this purpose, the court shall proceed to make a final distribution of the estate, withdrawing the administration from the State of Georgia, in whose court it was rightfully commenced, and was then actually pending, into the Chancery Court of this State, is a proposition to which I have never been able to obtain my consent. What is the court called upon by this bill to do? Certainly not to decree this slave to the complainants, irrespective of the condition of the estate, as shown by the administration of the assets in the Court of Ordinary in Georgia. Could such proceeding as this be tolerated, the rights of creditors would be wholly disregarded, and the proceedings of a court of our sister State, in matters which fall peculiarly within its jurisdiction and cognizance, would be contemned and held for nought. It is manifest then, that in order to ascertain the distributive share of the estate, to which the complainants in the bill will be entitled under the will, the whole account must be gone into with the administrators or executors. The amount of assets, the liabilities of the estate, the

expenses incident to its management, in the form of allowances to the personal representatives, and the fees of the court, &c.— all these must be ascertained before it can be determined that this property is not needed for the payment of debts; for until the debts of the estate are paid, no distribution can be made. Well, after the whole matter shall have been gone through, and a decree is made, all that can be affected by it is the negro slave in controversy. The court may decree him to the complainants, and thus would end *this* case. But, perhaps, another person may have purchased, in the same way, another slave, and to recover this, the same account must be taken; for as against the claimant of the second slave, the proceedings had to recover the first, and to which he was neither party nor privy, cannot bind him; and thus, as many settlements and accountings of the estate must be made, as there are separate articles of property found in possession of different individuals. Besides all this, it would be perfectly competent for the Court of Ordinary in Georgia, whose jurisdiction, having rightfully and previously vested, could not be taken away by any thing our court might do, to proceed and make a full and final settlement of the estate, decreeing to the creditors the whole of the assets, charging the executor and executrix the full value of all this property, so alleged to have been fraudulently purchased, and thus leaving not one cent for distribution among the legatees. But I need not pursue this line of argument further. It must be apparent that by entertaining jurisdiction in such cases, and administering estates in chancery in this State, the administration of which has been previously commenced and is properly pending in the court of a sister State, we shall bring about a conflict of jurisdiction, from which great inconvenience and hardship will result. It is true, the court of chancery, which acts *in personam*, might, if it had jurisdiction of the person, compel him by injunction and attachment for contempt, to desist from instituting proceedings in the court of another State, and to abide by the account which it had taken, but this is occupying somewhat delicate ground, and such extraordinary process would never be granted, if the proceeding in the foreign court had been previously rightfully commenced; for in that case, the foreign court might resort to such restraining measures as to the opposite party, and thus each being enjoined from proceeding,

the rights of the parties would be sacrificed in this conflict of jurisdiction. The better rule, and one more consonant with sound policy, and that comity which should obtain between States, is to refer the parties to the domestic forum for redress. Mead v. Merritt & Peck, 2 Paige, 402; Peck v. Mead, ex'r, 2 Wend. R. 470; Driggs v. Walcott, 4 Cranch, 179; 7 ib. 278; Story's Eq. Pl., § 489; Story's Confl. L., 432, n. 1.

It very clearly appears, from the whole case made by the record, that the estate of Thomas Worthy has never been settled in Georgia; that it is still in debt; and that Lyon, the defendant, paid for the slave in question the sum of $450, which sum was appropriated towards the payment of a judgment against the estate in the Superior Court of Troup county, Georgia, a balance of which judgment, amounting to $326 50, with interest from the 1st April 1845, still remains due and unpaid. Under these circumstances, we feel no hesitation in holding that the complainants were rightfully denied the relief sought by the bill.

Decree affirmed.