[Wright v. Phillips et al.]

# Wright *v.* Phillips *et al.*

56 69
f129 657

*Bill in Equity for Injunction of Chancery Decree, and Settlement of Decedent's Estate.*

1. *Injunction of decree in equity.*—As a general rule, a court of equity will not enjoin the execution of one of its own decrees, at the instance of a party or privy, but will leave him to seek redress by bill of review under the statute (Rev. Code, § 3404), or by petition under the rules of chancery practice.

2. *Equitable relief against execution of decree.*—When a person seeks to prevent the execution of a decree in chancery, to which he is not a party, on account of matters outside of the issues in the cause, though germane to it, the proper practice, ordinarily, is to obtain from the court or chancellor a restraining order, or an order to suspend proceedings under the decree, upon proper security being given.

3. *Decedent's estate; when distributee may maintain bill against administrator.* As to the right of one of several distributees of an intestate's estate to maintain a bill in equity against the administrator, to recover his portion of a specific fund not needed for the purposes of administration, without making the other distributees parties, and without asking a final settlement and distribution of the estate, the case of *Chambers v. Wright*, 52 Ala. 444–52, is not to be "regarded as an authoritative precedent in all similar cases," though it may be justified by its own peculiar circumstances.

4. *Same; administrations in different jurisdictions.*—The estate of a deceased person is substantially but one estate, and the respective distributees are interested in it as a whole, although portions of the property may be situated in different jurisdictions ; and hence, if one of the distributees obtains possession of more than his share of the assets outside of the domestic jurisdiction, and the fact is brought to the knowledge of the proper court at the place of the intestate's domicile, that court will, on a proper showing, charge the excess against his distributive share of the assets within its jurisdiction. Yet, in the absence of special equitable circumstances, each administration must be settled in the jurisdiction by which it was granted; and when any surplus remains in the hands of a foreign or ancillary administrator, after paying all debts and charges of administration in that jurisdiction, the foreign court will, in a spirit of comity, and as matter of judicial discretion, not as matter of right, order it to be paid over to the domiciliary administrator.

5. *Conclusiveness of chancery decree, as between distributees and administrator.* A decree in chancery against an administrator, in favor of one of the distributees of his intestate's estate, for his distributive share of a specific fund, which the administrator had collected, and which, not being needed for the purposes of administration, he had distributed among all the other parties entitled to it, retaining said distributee's share on account of unsettled transactions between him and the foreign administrators of the estate,—does not conclude or bar the other distributees, who were not parties to the suit, from asking equitable relief against the decree, on the ground that said distributee has received more than his proper share of the estate, including the assets in the foreign jurisdiction, and is insolvent ; but, as to any set-off, or claim for damages, on account of said distributee's conversion or appropriation of assets, which might have been available to the administrator in defense of that suit, and which was in fact then presented and adjudicated, the decree is conclusive.

6. *Settlement of decedent's estate in equity ; conclusiveness of chancery decree, and suspension of execution thereof.*—The intestate died in Alabama, where he resided. Letters of administration on his estate were granted in New York,

where most of the distributees resided. The administrators seized, in New York, a large quantity of cotton, assets of the estate, which one of the distributees in Alabama had sold without authority, the purchaser agreeing to ship it to New York, and there sell it on their joint account; and the purchaser threatening litigation, they compromised the matter with him, and paid him a sum of money, on the written request of said distributee that they would do so, 'and charge to him in their administration account the amount so paid.' Afterwards, letters of administration on the estate were granted in Alabama, and the Alabama administrator collected a large sum of money, assets of the estate, which was on deposit in England, and which, not being needed for the payment of debts, or the charges of administration, was distributed by him among the several persons interested in the estate ; but he retained the share of said distributee, on account of said cotton transaction. Thereupon, said distributee filed a bill in equity against the Alabama administrator, not making the other distributees parties, and obtained a decree for his distributive share of said fund, which decree was affirmed by this court on appeal. The other distributees afterwards filed the bill in this case, to restrain the execution of that decree, and to remove the administration and settlement of the estate into equity; alleging that the complainant in said decree was insolvent, that the amount of that decree was greater than his entire distributive share of the estate, after deducting the amount paid on his account by the New York administrators, and that all the assets received by the New York administrators had been expended in the regular course of administration, though their administration was not finally settled. *Held*, that the bill was not wanting in equity— that the complainants were entitled to have the execution of the decree suspended until the final settlement of the estate, and were not concluded by the former decree.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 19th October, 1875, by Orville Phillips and others, residents of New York, Ohio, and Kansas, and distributees of the estate of James Wright, deceased, against W. H. Chambers, as the administrator of said decedent, William H. Wright, James Wright, and James W. Phillips ; the three persons last named being also distributees of said estate. It sought to remove the administration and settlement of said estate from the Probate Court of Chambers county, which had granted the letters of administration to Chambers, into the said Chancery Court, and to enjoin the execution of a decree, rendered by said Chancery Court, in favor of said James Wright, one of the defendants, against said Chambers as administrator; which decree was affirmed by this court on appeal, at its June term, 1875, as shown by the report of the case, *Chambers v. Wright*, 52 Ala. 444–52. The material facts of the case were thus stated by

MANNING, J.—"James Wright, senior, of Russell county, Alabama, died intestate, in 1864, during the late war, leaving a large estate in land, slaves, cotton (more than six hundred bales), and money in the hands of English factors. This money amounted to over $100,000, and is called in this cause the 'Liverpool fund.' He left surviving him between twelve

and twenty collateral relations, none nearer than nephews and nieces, entitled by law as heirs and distributees to his estate. He left also surviving him a natural son, who, together with appellant, James Wright, Jr., one of the nephews, lived with intestate several years before and at the time of his death; and the two seem to have regarded themselves as destined and entitled to succeed at his death to his property. All the other persons, next of kin as aforesaid, resided in New York, Ohio, and other northern and north-western States. War was flagrant when intestate died, and his natural son and James Wright, Jr., remained on the premises of the deceased, kept possession of the property there of his estate as owners of it, and having divided the six hundred and odd bales of cotton between them, severally disposed of the lots thus taken by them, respectively, so that a short time after the war ceased, in 1865, they were shipped to and arrived in New York for market. Of the cotton thus taken by appellant, James Wright, Jr., one McAllister shipped 304 bales to New York, under an agreement with Wright, by which he was to have a share of the proceeds. This cotton, however, was claimed in that city by James W. Phillips and Wm. H. Wright, who had become administrators of the intestate's estate in New York, and were his nephews; and after. suit brought, and conferences between the parties, and counsel taken of lawyers, the cotton was delivered up to them as administrators, upon their paying to McAllister, on account of appellant James Wright, $6,000, and $750 to some other persons, on account of the cotton, and $100 fee to an attorney of whom he had taken counsel. Concerning these payments James Wright signed an instrument, dated September 1st, 1865, requesting the administrator to settle with McAllister (in the language of the writing) 'his claim against me for damages in consequence of my failure to make the title of three hundred and twenty-three bales of cotton sold by me to him. I leave you to make the best terms you can with him, and charge to me in your administration account the amount allowed or paid in the settlement.' The administrators thus got three hundred and four bales of cotton of James Wright, and with his assistance got three hundred and odd bales more of the natural son, upon a compromise with him; all of which they received and sold as property of the estate. They also took possession of the property in Alabama, and undertook to carry on the plantation business there, continuing to do so nearly two years.

"In March, 1867, John Gill Shorter, now deceased, and defendant Chambers, became administrators in Alabama of the estate of James Wright, deceased, and took possession

as such of the property in this State. They also, some time afterwards, obtained the 'Liverpool fund' from England, the net amount of which they promptly divided among the several distributees, each receiving his portion, except appellant James Wright; his share ($6,830 50-100) being retained 'to meet his deficiency, in whole or in part, growing out of the cotton transactions.' In 1874, administrator Shorter being dead, James Wright, Jr., sued Chambers, the surviving administrator, in the Chancery Court of Russell county, and obtained a decree of that court for his (Wright's) share of the Liverpool fund, amounting then, August 14th, 1874, with interest, to $10,185 02-100, which decree was affirmed in this court.—See 52 Ala. 445. The bill in the cause now before us was filed to prevent execution of that decree, a decree of the same court in which this suit was brought, and to have the administration removed from the Probate Court into the Chancery Court of Russell county, and there continued, and distribution of the estate made.

"The complainants below in the present cause were Orville Phillips, and other heirs-at-law and distributees of the deceased, James Wright; and the bill was filed against James Wright, Jr., Chambers, administrator in Alabama, and James W. Phillips and William H. Wright, heirs-at-law and distributees, who are also, according to allegations in the bill, the administrators of the estate in New York, but are not here sued as such. All the heirs and distributees are parties to the cause, and are alleged to be of full age. The bill, in addition to the premises, avers that appellant James Wright is insolvent; that the estate received by the administrators in New York was all expended, as an account exhibited with the bill shows, in paying debts of the deceased, and in carrying on his plantation in Alabama, under the direction of the New York administrators, by authority of nearly all of the heirs and distributees, until the appointment of administrators in Alabama; that said James Wright's distributive share of the entire estate of the deceased will not be equivalent to the sum paid out for him, at his request as aforesaid, by the New York administrators; and that upon a full and fair settlement of the estate, nothing would be due from it to him upon the decree against Chambers, whose conduct in refusing to pay any sum to James Wright they all approve.

"Upon this bill, an injunction was ordered by the chancellor, and issued by the register, to restrain James Wright, Jr., from enforcing the execution of the decree against Chambers. In his answer, James Wright, Jr., among other things, insists: that the writing referred to, and signed by him, was procured upon an agreement between him and the New York

administrators, by which he was to be charged with only
one-half of the sum that should be paid to McAllister, and
they were to pay the other half (of which mention is made
in the bill also); that this was expressly agreed to by them,
and they assured him that the writing should be so under-
stood and executed; that one reason for making this agree-
ment was his promise that he would, as he did, render them
assistance in making a settlement with intestate's natural
son, who had taken possession of one-half of the cotton;
that the half of the sum aforesaid with which he was to be
charged, was to be charged, not against his distributive share
of the estate generally, but against his share of the portion
in their hands in New York to be administered, which share
would be more than sufficient to discharge the sum with
which he was to be charged as aforesaid; that their admin-
istration had not been settled in New York; and that the
account thereof filed as an exhibit to the bill is not correct;
though in what respect it is not, he does not say. With the
answer a demurrer was also filed.

"The case is here on appeal from an order of the chancel-
lor, refusing to dissolve the injunction for want of equity in
the bill, or upon the denials and averments in the answer;
and his decree is now assigned as error."

Thos. H. Watts, and Henry R. Shorter, for the appel-
lant.—1. The bill is wanting in equity, because the com-
plainants show no right in themselves to maintain the suit.
They allege no fraud on the part of the Alabama adminis-
trator, nor any fraudulent collusion between him and James
Wright, nor any collusion between either or both of them
and the New York administrators; nor is any refusal to sue,
or other misconduct, charged against the Alabama adminis-
trator. There is no allegation of the discovery of any new
fact, since the decision of the case between James Wright
and the Alabama administrator. If the administrator can
not maintain the suit, no reason is shown for allowing the
distributees to maintain it. The universal rule at law, and
the general rule in equity (always applicable in the absence
of special circumstances), is, that the personal representa-
tive has the exclusive right as to all the personal assets of
the estate.—*Kelly v. Kelly*, 9 Ala. 912; *Miller v. Eatman*, 11
Ala. 609; *Phillips v. McGrew*, 13 Ala. 255; *Vanderver v. Al-
ston*, 16 Ala. 494; *Beattie v. Abercrombie*, 18 Ala. 9; *Mahorner
v. Harrison*, 14 Ala. 829; *Vaughn v. Northrup*, 15 Peters, 1;
*Kane v. Paul*, 14 Peters, 33; 1 Wms. Ex. 508–9, 556, and
notes.

2. The three hundred bales of cotton converted by James

[Wright v. Phillips et al.]

Wright were in Alabama, and the domestic administrator only could maintain any action on account of it. His title was exclusive.—Authorities above cited. The contract between James Wright and the New York administrators, as to this cotton, was void, and no right of action can grow out of it. If any set-off, or recoupment, could be allowed on account of this cotton, it could only be allowed in favor of the person who has the exclusive right to sue. The rule in equity and at law is the same.—2 Brickell's Digest, 433, § 163 ; *Pearson v. Darrington,* 32 Ala. 227 ; *Godwin v. McGehee,* 15 Ala.

3. These matters, however, were available to Chambers, the Alabama administrator, in the former suit with James Wright ; and whether they were actually litigated or not, the decree in that suit is conclusive as to them.— *Waring v. Lewis,* at the last term; *Bell v. Thompson,* 34 Ala. 633 ; *Nelson v. Pruitt,* 37 Ala. 389. If the administrator is concluded, the distributees also are bound by that decree.

4 The claim for the conversion of the ten bales of cotton in 1865, even if unliquidated damages for a tort are available as a set-off in equity, is barred by the statute of limitations ; and the benefit of the statute can be claimed on demurrer for want of equity, without being specially pleaded.—*Nimmo v. Stewart,* 21 Ala. 682; *Byrd v. McDaniel,* 33 Ala. 18; *Bloodgood v. Kane,* 7 Johns. Ch. 90 ; *Johnson v. Johnson,* 5 Ala. 90.

5. Whenever a trustee is barred by the statute of limitations, or other cause, the *cestuis que trust* are also barred.—2 Brickell's Digest, 219, § 23 ; *Waring v. Lewis,* at the last term; *Brasher v. Williams,* 10 Ala. 630.

6. The advances made by the New York administrators can not be made the subject of a set-off in this suit. By the very terms of the contract, these advances were to be taken out of James Wright's share of the New York assets. The administration there has not been settled ; and until that has been done, it can not be known whether or not the assets there are sufficient for the purpose. There being no charge of fraud or collusion against the New York administrators, the distributees can not maintain any action.— *Gardner v. Gannt,* 19 Ala. 666, and authorities above cited. If this suit had been brought by the Alabama administrator, or by the New York administrators, and the distributees had been joined with them, there would have been a misjoinder of parties.

7. The courts in Alabama have no jurisdiction over the administration in New York, and have no power to compel a settlement of that administration ; nor can the foreign administrators be made parties defendant to a suit here.—*Scruggs v. Driver,* 31 Ala. 274; *Lyon v. Worthy,* 18 Ala. 784; Story's

Conflict of Laws, § 513. Although the New York administration is ancillary merely, yet it is independent; and until it has .been settled, no court in Alabama can interfere with it.—*Mahorner v. Harrison*, 14 Ala. 829; *Bradley v. Broughton*, 34 Ala. 794.

8. The account for settlement filed by the New York administrators, as shown by the exhibit to the bill, claims a credit for the advances made to or on account of James Wright; and it shows that, on a legal settlement there, there will be in their hands assets amounting to nearly $50,000.

9. The bill can not be maintained solely on the ground of a necessity for removing the administration and settlement of the estate into equity, since it does not aver that proceedings for a settlement have not been commenced in the Probate Court.— *Overall v. Reel*, 39 Ala. 138; *Chambers v. Wright*, 52 Ala. 445; *McNeill v. McNeill*, 36 Ala. 109. When the equity of a bill rests on the existence of a particular fact, though of a negative character, that fact must be distinctly alleged.—*Carroll v. Malone*, 28 Ala. 521; Brickell's Digest, 702, § 907.

10. If the bill makes out a case for equitable relief, it is destroyed by the denials of the answer, as to the circumstances under which the agreement was made, and the construction and meaning of it.

D. CLOPTON, *contra.*—1. The Chancery Court retains its original jurisdiction over the subject of administrations, and its powers may be invoked by the distributees, at any time before the concurrent jurisdiction of the Probate Court has attached, without the assignment of any special reason.—*McNeill v. McNeill*, 36 Ala. 109–15; *Stewart v. Stewart*, 31 Ala. 207–13.

2. But the bill shows special reasons for the interposition of a court of equity. The fundamental idea of the bill, and the theory on which its equity rests, is, that the estate of a deceased person, though situated in different jurisdictions, is a unit—one estate, entire and indivisible. The authorities clearly establish, that the administration of the domicile is the primary administration, and all others are subsidiary; that the primary administrator is accountable to the court by which he was appointed, not only for assets received within its jurisdiction, but also for assets received by him in another country; that his title to the personal property, wherever situated, is perfect, subject to the rights of creditors and distributees, though, where there is an ancillary administrator, the primary administrator is not entitled to the possession until the property is transmitted, either by the

[Wright v. Phillips et al.]

ancillary administrator, or by the court having jurisdiction thereof; and that for the purposes of distribution, and so far as the rights of distributees are concerned, the estate is entire and indivisible, and is to be accounted for and finally administered by the law of the domicile.—*Dawes v. Boyleston,* 9 Mass. 337–54; *Wilkins v. Ellet,* 9 Wallace, 740; *Parsons v. Lyman,* 20 N. Y. 103; *Jemison v. Haygood,* 10 Pick. 77; *Harvey v. Richards,* 1 Mason, 380; *Stevens v. Gaylord,* 11 Mass. 256; *Childress v. Bennett,* 10 Ala. 751.

3. The logical sequence from the foregoing propositions is, that the agreement between James Wright and the New York administrators was, in legal effect, an agreement between him and the estate—an agreement that the amounts paid for him were to be charged against his distributive share in the estate; and, indeed, there can be no pretense that they were to be charged on any other account than his distributive share. Now, his distributive share is one-fifteenth part of the estate; and he is not entitled to receive more than this, whether he receives it at all in New York, or all in Alabama, or part in each. Under the agreement with the New York administrators, he has already received more than six thousand dollars; and the aim and object of this suit is to make him account for this on the final settlement of the estate. If the New York administrators, instead of paying out this money, had retained it, and the New York court had remitted it here for distribution, there could be no doubt as to its final disposition; and it is equally the duty of the court here, on the final distribution, to take into consideration what has been done in both administrations.

4. The cotton having been wrongfully removed to New York, and there being no administrator in Alabama, the New York administrators had a right, and it was their duty, to prevent its destruction, and preserve it for the estate.— *Robinson v. Robinson,* 11 Ala. 943; *Miller v. Jones,* 26 Ala. 247. A court of equity, at the instance of any proper party, would have done what they did. Besides, the appellant was the person who had the cotton wrongfully carried off; he was a party to the compromise and settlement; he made the agreement with the New York administrators, and received the benefits of it; he is therefore estopped from denying their right, and can not be heard to take advantage of his own wrong. The complainants might have objected to it; but they elect to ratify what was done, and only ask to have the benefit of it. When the New York administrators received the cotton, they became trustees in respect to it; and they disposed of it with the concurrence of the appellant, one of the *cestuis que trust.* This disposition was either legal or un-

[Wright v. Phillips et al.]

authorized; if legal, the agreement as to the use of a part of the proceeds enures to the benefit of the other *cestuis que trust*; if unauthorized, the appellant became a trustee *in invitum* for them, at least as to that portion which was used for his benefit.

5. The complainants are not concluded by the decree in favor of James Wright against Chambers; for they were neither parties nor privies to that suit, though this court said that they ought to have been made parties. A decree does not prejudice the rights of those who ought to have been, but were not made parties.—*Hunt & Frowner v. Acre & Johnson*, 28 Ala. 580. Nor is that decree conclusive against Chambers, as to the matters now in controversy; for they were not actually determined in that suit, and, as this court then decided, were not within the issues.—*Hutchinson v. Dearing*, 20 Ala. 798; *Rake's Adm'r v. Pope*, 7 Ala. 161; *Chamberlain v. Gaillard*, 26 Ala. 504. That the distributees who are the complainants in this suit are not concluded by the decree in the former suit between Chambers and the appellant, to which they were not parties, see *McClernard v. Ridgway*, 12 Ala. 482; *McGuire v. Shelby*, 20 Ala. 456; *Rogers v. Grannis & Co.*, 20 Ala. 247; *Bond's Heirs v. Smith*, 2 Ala. 662; *Gwynn v. Hamilton*, 29 Ala. 233; *Hopper v. Steele*, 18 Ala. 828; *Lawson v. Lay*, 24 Ala. 184; *Williams v. Gibbes*, 17 Howard, 239.

MANNING, J.—A main object of the bill in this cause is, to restrain by injunction the execution of a decree of a court of chancery. Is this allowable, according to the practice of that court? High, in his work on Injunctions (§161), says: "It may be stated, as a general rule, that equity will not enjoin its own proceedings, and that a decree of a court of equity will not be restrained. The rule is based on the obvious reason, that, by enjoining its own decrees, the court would thereby declare that to be improper and wrong, which it had previously declared to be proper and right." The author ought, perhaps, to have said further: "The principle upon which injunctions are granted, to stay proceedings in *other* courts, is, that from their organization they cannot take effectual notice of the circumstances which render *their* proceedings wrongful; but such is not the case of a court of equity." Its decisions are made in view of all the equitable, as well as the legal rights, of the parties concerned. In *Greenlee v. McDowell* (4 Ired. Eq. 481), referred to as the authority for section 161 (*supra*), the court further say: "We are not apprised of any precedent for such a bill," and that it is "certainly a novelty." But they add, speaking of pro-

[Wright v. Phillips et al.]

cess issued for the execution of a decree of an equity court, a party grieved thereby " is not without redress. The court can, and, upon a proper case made, supported by affidavits, will withdraw the process itself, or stay an execution by granting a *supersedeas.*—2 Madd. 375."

In *Dyckman v. Kernochan* (2 Paige, 26), WALWORTH, Ch., said: " It is not the practice of this court, to permit an injunction bill to be filed, either by parties or privies to, the proceedings in a former suit, to restrain proceedings under the decree. The court can control its own process, and the proceedings of its own officers, without an original bill being filed for that purpose." He said further:— " The master went beyond his authority, in allowing an injunction to restrain the defendants from carrying into effect a decree of this court. If any order was proper, the present complainants should have applied by a petition to the chancellor." See, also, *Dederick v. Hoysradt* (4 Howard's Practice Rep. 350), and the observations of GASTON, J., in *McReynolds v. Harshaw*, 2 Iredell's Eq. 196–7. We find nothing on the subject in Story's works on equity, nor anything opposed to the foregoing quotations, in any of the works on equity pleading or practice. In this State, the correct practice, in most cases, would probably be that indicated in section 3404 of the Revised Code—an order directing proceedings to be suspended, on security being given.

In New York, since the adoption of its code under the constitution of 1846, the different forms of action previously in use have been abolished, and one common form is prescribed, to be used in all civil causes between parties, with such variations only as the facts to be presented require ; and it is made the duty of the courts, as courts of both law and equity, to hear and determine any such cause, whether of a kind previously regarded as of a legal or equitable character, according to the principles and rules applicable to the case made.

In reference to these courts, Judge Willard, in his work on Equity Jurisprudence (350–1), remarks: "As an injunction, to restrain proceedings at law, is directed only to the parties, and assumes no superiority over the court in which the action is pending, but is granted solely on the ground that some equitable circumstances exist, which render the prosecution at law against conscience, there is no reason why an injunction should not be granted by the court in which the action is pending, if the court has jurisdiction both at law and in equity." These observations of Judge Willard, which relate to actions at law only, and while they are pending, do not reach the question in hand. But they suggest a good

reason why, in some instances, perhaps, a chancellor should not, from a too sensitive idea of unfitness, refuse to perpetually enjoin a party from carrying into effect a decree he had rendered in favor of such party.

A court of equity, upon its being properly shown that it had, by fraud or imposition, been led into making an unjust decree, would not hesitate to annul it. See *Manaton v. Molesworth*, 1 Eden, 18 ; *Kennedy v. Daly*, 1 Sch. & Lefroy, 355 ; *Gifford v. Hort*, Ib. 399. And if the same effect can be produced by perpetually enjoining the execution of a decree, it may sometimes be allowable for the court which rendered it to do so. Questions of this sort are most likely to arise in cases upon bills of review, or bills in the nature of bills of review. And we find, in a case of that kind, some judicious observations on the subject, in an opinion of Marshall, J. in the Court of Appeals of Kentucky ; a case like the one before us, in the circumstance that the decree complained of, in the Chancery Court that rendered it, had been affirmed in the Court of Appeals. Judge Marshall says : " Although, in strictness, it may be proper that the first decree should be formally set aside, where relief inconsistent with it is to be granted, it must still be within the power of the court to determine, according to the nature of the case, and the attitude of the parties, whether the ultimate relief to which the party may be entitled shall be granted on the bill of review, or in the original suit, by reversing the former decree, and making a new one. * * * A perpetual injunction, against a decree for money, is equivalent to a reversal of the first decree, and a dismissal of the bill on which it is founded ; or, if the money has been paid, a direct decree for its repayment is equivalent to a reversal of the original demand, and a decree in that suit for a restoration of the money."—*Basye v. Beard's Ex'rs*, 12 B. Monr. 587–8. Indeed, a perpetual injunction against the execution of a decree, if the defendant in it is entitled to relief, might be a better practice, in a case like the present, than the reversal, or setting aside by an inferior court, of a decree which had been affirmed by, and so had become the judgment of an appellate court. If one or the other of the two orders had to be made, it would appear less unseemly and irregular, in the lower court, to render its decree in the new suit, than to set aside the affirmed decree in the original cause. Injunctions are granted, though the practice was hesitatingly adopted in England, in interpleader cases, to restrain a claimant of the fund in dispute from prosecuting a *pending* suit in equity, as well as an action at law.—*Crawford v. Fisher*, 10 Sim. 479 ; *Warington v. Wheatstone*, Jac. 202 ; *Prudential Ass. Co. v.*

*Thomas*, Law R. 3 Ch. App. 74. And see *The Erie Railway Co. v. Ramsey*, 45 N. Y. 637.

2. But the bill, in the present cause, is not a bill of review, nor a bill in the nature of a bill of review. Nor is it a bill to impeach a decree for fraud in the procuring of it. It does not propose to bring up the original case for revision, nor to have the decree in it set aside or altered. Its chief object is, rather, to prevent the execution of the decree, for matters outside of, though related to the case in which it was rendered; and this, at the instance of persons who were not parties to that suit. Ordinarily, the proper mode of effecting that object would be by obtaining from the court, or chancellor, a restraining order, or an order to suspend proceedings, upon proper and sufficient security therefor being given. It would lead to very embarrassing mischiefs, if a circuit or city judge, or chancellor of another division, each of whom has full power to issue preliminary injunctions generally, could be allowed to interfere by that writ, and arrest the execution of a decree rendered by the chancellor of a different division, in his own court, after thorough consideration; and the only means of preventing such consequences is by a strict adherence to the established practice, according to which a court of equity keeps control over all process from itself, and rejects the instrumentality of a writ of injunction to stay execution of a decree in chancery.

3. But, as in the present instance, there was connected with the main object the further one, necessary thereto, of bringing other parties, defendants as well as plaintiffs, before the court; and also, that of having the administration of the estate out of which the questions in this case arise, transferred from the Probate Court of Russell county, into the Chancery Court, and for these purposes a bill was necessary, we proceed to a consideration of the cause on its merits.

The decree of James Wright, Jun., against Chambers, the administrator in Alabama, which the present bill seeks to have enjoined, was obtained in a suit brought by Wright, in 1874, for his share of certain money of the estate of James Wright, deceased, known as the "Liverpool fund," which, not being needed for administration, was set apart, when received by the Alabama administrators, several years before, for division among all the distributees. The bill before us says, that Chambers and Shorter, the administrators in Alabama, "distributed this fund according to the several interests of the several distributees, next of kin of said James Wright, and there fell and was allotted to said James Wright, the nephew, the sum of $6,830 50; that all of said distributive interests in said Liverpool fund were paid over to the re-

[Wright v. Phillips et al.]

spective distributees, except the said sum of $6,830 50, allotted to said James Wright; that this sum was not paid to him, but was withheld by the Alabama administrators, and placed to the credit of the said James Wright, to meet his deficiency, in whole or in part, growing out of said cotton transactions." The cotton transactions here referred to were had in 1865, not with Chambers or Shorter, but with other administrators in New York, where a large part of the estate of the intestate was received and administered by them.

3. We are not inclined to have the decision of this court, affirming that of the chancellor, in *Chambers v. Wright* (52 Ala. 445), regarded as an authoritative precedent in all similar cases. Probably, very few will arise, having all the peculiar features by which that was distinguished. The separation of the Liverpool fund, in its entirety, for distribution, as a part of the estate not needed for administration otherwise, and the division of it into aliquot shares of ascertained amounts, and the allotment of these to the several distributees, respectively, and the payment to all of them except to James Wright, jun., made his position not much unlike that of a legatee of a specific sum of money, who is also made by the testator one of the several residuary legatees. Such a legatee would be entitled to maintain his separate suit, not for his share as residuary legatee, but for the particular bequest, against the executor alone ; because, "in ordinary cases, the executor represents the whole estate, and no legatee need be made a party with him."—*Court v. Jeffrey*, 1 Sim. & Stu. 105–6; *Attorney General v. Ryder*, 2 Chan. Ca. 178; *West v. Randall*, 2 Mason, 192; *Pritchard v. Hicks*, 1 Paige, 273; *Brown v. Ricketts*, 3 Johns. Ch. R. 555; Story's Eq. Pl. § 203. See, also, *Smith v. West*, 3 Madd. 10. How far the principle recognized in these case would be applicable to that of James Wright against Chambers, we need not pause to consider. The question is not, whether the decree in it was or was not conclusive between the parties to it, but whether the present complainants, who were not parties thereto, and who have, as co-distributees with Wright, an interest in common with him in the estate out of which that decree, if paid, must be satisfied, are concluded by it from showing that, by reason of excessive payments made on his account, under another jurisdiction, and his insolvency, James Wright ought not to have execution of the decree here.

4. It is certainly true, that the estate of a deceased person is substantially but one estate, wherever the various portions of it may be. The interests of distributees in it are interests in it as a whole, of which each is entitled to his due

proportion, and none to more. As to them, it is a common trust fund, in the hands of persons who severally bear to them the relation of trustees. Hence, if such an estate be composed of parts that are situated and under administration in different States, and one of the distributees possesses himself of more than his due share of the assets in one of those States, and this be duly ascertained, and made known to the proper court in the State of decedent's domicile, so that it may take cognizance thereof, such court will endeavor to effect an adjustment, whereby he shall be charged with the excess he has thus received, against his share of the assets within its jurisdiction. But this will not be done, when the excess thus received was paid to him on account of his proper share, by the administrator in another State, unless there be special circumstances in the case, creating an equity to justify the court here in taking cognizance of matters transacted by a foreign administrator. For, although there is unity of the estate thus separated, there is not unity of administration also. Each administration must be settled in the State in which it was granted, and not elsewhere. The administrator abroad is not the mere agent of him of the domicile. The former, as well as the latter, collects and receives the assets in his capacity of administrator generally; and so far as they may be wanted for the payment of the debts and legacies, "he holds them in trust for the creditors and legatees; and as to the *residuum*, he holds it in trust for the next of kin"—(*Fretwell v. McLemore*, 52 Ala. 134; *Harvey v. Richards*, 1 Mason, 381); and although, as in *Childress v. Bennett*, 10 Ala. 751, if there are no debts or legacies remaining unpaid, no creditors, legatees, or next of kin, in the State other than that of decedent's domicile, and there are creditors, without the means of paying them, in the State of the domicile, a court of the former State will, in a spirit of comity, order the administrator there to deliver the assets left in his hands to the home administrator; yet, this "is a matter, not of jurisdiction, but of judicial discretion."—*Fretwell v. McLemore*, and *Harvey v. Richards, supra; Parsons v. Lyman*, 20 N. Y. 103; *Carmichael v. Ray*, 5 Ired. Eq. 365; Whart. Confl. of Laws, §§ 625, 629, 634–5–6. Hence, the administrations in different States may be quite independent of one another, especially when, as in the present instance, the distributees do not reside in that of the domicile of the deceased, but in another, where a portion of his estate was situated, and is under administration, or in other States convenient of access thereto. Not only may such separate administrations be independent of each other, but, where there is no insolvency, and no will with provisions that might

operate contrarily, they should be kept so, and be severally settled, as completely as if they concerned different estates, instead of different portions of the same estate. For, when, upon such separate settlements, the residue of assets in each administrator's hands is divided equally among all the next of kin, according to their respective rights, then the entire estate is so divided among them. Each gets his due share of the whole, by getting his due share of the several parts. One administration, moreover, is, then, not complicated with, or its settlement delayed by the proceedings in another; and excuses for deferring settlements for that reason are not afforded to reluctant administrators, or influential or favored distributees. The next of kin have it, also, more completely in their power to require, as they ought, each of the separate administrators to perform faithfully his particular duties, and to hold him responsible himself for his mismanagement, instead of embarrassing another administration by seeking to have his errors corrected through litigation introduced into it. This, we say, ought not to be allowed, except in cases where peculiar circumstances create a special equity.

5. The complainants in the present cause do allege special circumstances, as creating such an equity. James Wright, the intestate, died during the late war. His nephew, James Wright, and a natural son of decedent, who were living with him at the time of his death, assumed ownership of the whole of his estate in Alabama, and divided the large amount of cotton, over 600 bales, between themselves. Appellant James Wright, one of numerous distributees, entitled as such to only one-fifteenth part of the residue upon division of the estate, thus took to himself over 300 bales, one-half of this valuable lot of cotton; and having disposed of them as his, they were sent to New York, in 1865, to be there sold. The consequence was, that the New York administrators were compelled to resort to legal proceedings to get possession of this cotton, assets of decedent's estate, from the persons into whose hands it thereby had passed. One of these, McAllister, had bought it from James Wright, and, if deprived of it, would have a large claim against him for damages. Litigation to recover the cotton would certainly be expensive, and the result might be doubtful. Under these circumstances, and with authority from nearly all of the next of kin, and the subsequent approval of all of complainants, the New York administrators, in order at the same time to get possession of the cotton and to discharge McAllister's claims against James Wright, which the former threatened to enforce, if necessary, against the interest of

[Wright v. Phillips et al.]

the latter in the estate in Alabama, paid to McAllister $6,000, upon the written request of Wright to them to settle those claims, and to charge him with the sum so paid in their administration accounts. Would it not be highly inequitable to hold that, if it turned out that the sum so paid exceeded his distributive share of the estate in their hands for division, the other distributees, and not he, should bear the loss? The payment was made to enable the administrators to get possession speedily, as it was important they should, of this very valuable part of the assets, and to relieve him, as well as them, from embarrassments into which they were brought by his unlawful acts.

It is objected, though, that he consented to be charged with that payment only against his distributive share of the assets that should be in their hands. The effect of the writing and transaction may be that the advance should be charged against that fund primarily. It was, doubtless, then supposed, by all the parties, that it would be ample to meet the expenditure. In fact, the New York administrators were then the only administrators of intestate's estate. They took charge, for nearly two years, of the property in Alabama, as well as of the assets in New York. And we cannot doubt that the true meaning of the transaction is, that if James Wright's share of the latter should prove insufficient to meet the advance made on his behalf, then it should be extinguished out of the share that might be coming to him from the assets in Alabama. This equity would certainly require.

It is also objected that the writing, of which "Exhibit No. 1" to the bill is a copy, does not set forth the true agreement between the parties; that according to this agreement, Wright was to be charged with only one-half of the payment to McAllister, and not with all of it. This is a question we need not now determine. If it can be shown, upon a proper presentation of it, that the writing was obtained from appellant by fraud, or that it did not and was not intended to set forth the agreement made, but rather to be used as authority from him to surrender the notes of McAllister and negotiate a settlement with the latter, it may be that the writing will not preclude James Wright from proving what was the agreement actually made between him and the administrators.— *Lipincott v. Whitman*, S. C. Penn., Feb. 8, 1877, 4 American Law Times; *Life Asso. v. Cravens*, 60 Mo. 388; *Bruce v. Beck*, 43 *Ib.* 266; *Rollins v. Claybrook*, 22 Mo. 406; 1 Greenl. on Ev. §284 a. But, whatever the sum with which he is chargeable may be, it was chargeable against his distributive share

of the estate in Alabama, so far as it was not met and set off by his share of the assets in New York.

The decree in his favor against Chambers does not bar the distributees. It only ascertains what was the amount of his portion of the Liverpool fund, and subjects Chambers to the payment of it. But it does not hinder other distributees of the estate, of which that sum is a portion, and who were not parties to that cause, from showing that Wright is insolvent, and that if he is permitted to receive the amount of this decree, he will obtain money which belongs to them, and which they can not afterwards get back from him, although entitled to do so.—Story's Eq. Pl., § 106.

Whether Wright has in fact received more than his distributive share of the assets in New York, and if so how much more, must be ascertained, it seems to me, by a settlement of the administration there. Such a settlement can not be judicially effected any where else than in a court of that State. No tribunal in Alabama can bring the New York administrators, while they continue to reside in New York, to a settlement here.—(Whart. Confl. of Laws, § 616; *Worthy v. Lyon*, 18 Ala. 784; *Colbert v. Daniel*, 32 Ala. 314.) And I do not perceive how, without such a settlement, it can be known whether James Wright has or has not received more than he was entitled to, of the assets in their hands.—See *Irving v. DeKay*, 10 Paige, 324, and authorities *supra*. *Quod non apparet, non est; et non apparet, judicialiter ante judicium.*

That such a settlement has not been made, is not the fault of Chambers. Not being of kin to the intestate, he was not a party to the administration cause in New York. Nor had he, as administrator, any right to demand that he should be admitted as a party to it; since none of the distributees of the estate reside in Alabama, and the portion of the estate of which he has charge is not insolvent. It was, therefore, never in his power to oppose to the rendition of the decree against him the same defense which complainants make against the execution of it. For, of course, he could not avail himself, in a proceeding by a distributee against him here, of a payment made to that distributee, by other persons, in the course of an independent administration by them, of a portion of the estate elsewhere. That was a matter in which he had no part or concern. It was for those who had an interest in it to bring it before a court in Alabama; as the complainants in the present cause now have done.

Who is to blame, for a failure to have a settlement of the New York administration, or whether any body is, does not appear. It was in the power, either of Wright, or of the complainants, to have required it. They are all distributees

of the estate; and he and several of them reside in New York. In respect to that matter, they stand on a footing of equality. But he, having brought his suit, and got a decree against Chambers, without making them parties, can not, under the circumstances, be allowed to have execution of it, until they have an opportunity to make good the averments in their bill. The Court of Chancery can, if it see proper, cause a suspension of the proceedings, not only upon the decree rendered, but in the present cause also, to enable the parties to have a settlement of the administration in New York, that it may be ascertained thereby how the account stands between Wright and the estate. Such settlement ought, of course, to be made without any unnecessary delay.

The claim made on account of the ten bales alleged to have been sold by Wright in Columbus would not, by itself, have been a reason for suspending the execution of the decree. If there was any right of action, or set-off, growing out of that transaction, it existed in favor of Chambers, as administrator, long before the suit against him was brought: and what might have been available to reduce the amount of the decree, before it was rendered, can not be allowed as a payment upon it afterwards. If, however, it had not been so presented as to have been decided upon its merits, in the case of Wright against Chambers, the claim may, perhaps, be set up as a matter to be accounted for in the final settlement and division of that part of the estate, which is outside of the Liverpool fund.

The main facts of the case, upon which the equity of the bill depends, are admitted by the answer. The very general denial, in terms unusually vague, of the correctness of the account (set forth as Exhibit 4 to the bill), as that of the New York administration, without designating any thing in it as incorrect; and the allegation in the answer, setting up matters in avoidance of those charged in the bill, would not, under the circumstances of this case, require a dsssolution of the injunction upon the averments in the answer, if that writ had been properly issued; but it was not.

It is, therefore, considered, ordered, and adjudged, that the decree of the chancellor, refusing to dissolve the injunction in this cause, be, and the same is hereby, modified and changed, and that the injunction, and the order granting it, be, and they hereby are, discharged and vacated; and the appellees will pay the costs of said order and injunction, and of the proceedings thereupon. It is further ordered, adjudged, and decreed, that upon the appellees, or some of them, entering into bond, with good and sufficient sureties, to be approved by the chancellor of the eastern chancery division of

this State, within thirty days from the rendition of this decree, payable to the appellant, James Wright, in double the amount of the decree rendered in his favor against William H. Chambers as administrator of James Wright, deceased, described in the bill in this cause, conditioned for the payment to said appellant of said decree, or such part of the amount thereof as shall, upon the final decree in this cause, be found to be due to him, all proceedings on said decree be, and they hereby are, suspended and stayed, until the final determination of this cause, or until the said Court of Chancery of Russell county shall otherwise direct. It is further ordered and decreed, that appellant, James Wright, is hereby restrained and prohibited from commencing or prosecuting any action at law on the injunction bond heretofore executed, by or on behalf of appellees in this cause, without the leave of the Court of Chancery first had and obtained. It is further ordered and adjudged, that the costs of the appeal in this cause, in this court and in the court below, be paid out of assets of the estate of James Wright, deceased, by William H. Chambers, as administrator thereof, and that he have credit for the same on the settlement of his accounts as administrator.