## *Gardner, as Adm'r, v. Kelso *et al.*

| 80  | 497 |
| 109 | 437 |

| 80  | 497 |
| 119 | 384 |

*Bill in Equity to Enforce Vendor's Lien.*

1. *Sale of decedent's lands for distribution; when title of heirs is devested.*—When a decedent's lands are sold for distribution, under an order and decree of the Probate Court, the title of the heirs is not devested until the purchase-money has been paid in full.

2. *Parties to bill.*—When a bill seeks to enforce a vendor's lien for the unpaid purchase-money of land, which was sold for distribution among the heirs of the deceased owner, under a decree of the Probate Court, all the persons in whom the legal title was vested are necessary parties.

3. *Same; who are heirs and next of kin of deceased grandchild.*—The only son of a deceased daughter, who left neither child, father, mother, nor maternal grandmother, living at the time of his death, being one of the heirs at law of the decedent; it can not be assumed that his four maternal aunts are his only heirs and next of kin, when that fact is not averred, and it is not shown that he left no grandfather, nor maternal grandmother, nor maternal uncle or aunts.

4. *Same; personal representative of deceased heir.*—It being shown that a part of the purchase-money for the land was paid, and was distributed in unequal proportions among the several heirs; the personal representative of a deceased heir, who had received more than his proportion of the money, is a necessary party to the statement of the account; and being made a party, on his own motion, after the account has been taken, the register's report made, and on the day before the final decree was rendered, the decree will be reversed at his instance.

5. *Decree distributing purchase-money; settlement of decedent's estate.* Under such bill to enforce the vendor's lien, a decree distributing the unpaid purchase-money can not be rendered without a statement of the.

---

NOTE.—After the rendition of this decision, a consent decree was entered by the court, based on an agreement of counsel, which did not, however, affect in any manner the principles decided in the case.                                    REPORTER.

32

[Gardner, as Adm'r, v. Kelso et al.]

accounts of the deceased administrator, who was the purchaser, and who had made unequal distribution among the heirs; and this can not be done without a removal of the settlement of the estate from the Probate Court, under pleadings properly framed; nor can such removal be asked by the personal representative unless special equitable reasons are shown.

APPEAL from the Chancery Court of Dallas.

Heard before Hon. JNO. A. FOSTER.

This was a bill filed by Andrew H. Gardner, as administrator *de bonis non*, with the will annexed, of Garland T. Gardner, deceased, against R. U. Kelso and Virgil H. Gardner, and prayed the sale of certain lands which said defendants had purchased from the estate of said Garland T. Gardner, but for which they had not paid, and against which a vendor's lien for unpaid purchase-money was sought to be enforced. The bill alleges that the lands in question had been sold by order of the Probate Court for distribution, and at said sale Virgil H. Gardner and Mary Wyckoff became the purchasers,—that afterwards Mary Wyckoff transferred her purchase to Virgil H. Gardner, who executed his notes for the amount of the purchase-money; that these notes were not paid; that one R. U. Kelso, with knowledge that the purchase-money had not been paid, purchased from Virgil H. Gardner. The original bill was amended by making the heirs at law of Garland T. Gardner parties defendant. Upon submission on pleadings and proof the chancellor rendered a final decree, ordering the lands to be sold, and after payment of costs, attorneys' fees, and charges of administration, ordered the balance of the proceeds to be distributed among the heirs at law of the decedent, Garland T. Gardner, without reference to a final settlement of the estate. The other facts, material to the full understanding of the case, appear in the opinion of the court.

WHITE & WHITE, for appellants.—The court erred in decreeing distribution of the assets arising from the sale of lands due as unpaid purchase-money, without first requiring a settlement to be made of the estate.— *Worthy v. Lyon*, 18 Ala. 786. Bat Smith Lucy's share of the proceeds of the sale of the lands could only be properly paid to his personal representative.—*Chaney's Heirs v. Chaney's Adm'r*, 38 Ala. 35. Should it appear that A. V. Gardner owned the interest of Bat Smith Lucy in the estate of Garland Gardner, still as Lucy was an heir at law of Virgil H. Gardner, who was an heir of Garland Gardner, his personal representative was a necessary party. *McCarthy v. McCarthy*, 74 Ala. 547; *Dooley v. Villalonga*, 61 Ala. 129. All of the property of an estate, real and personal, is subject to administration.—38 Ala. 35; 23 Ala. 488.

[Gardner, as Adm'r, v. Kelso et al.]

A. V. Gardner, as the assignee of Lucy, stands in his shoes, and must look to the personal representative for his interest in the estate.—8 Ala. 552; 35 Ala. 105; 11 Ala. 143; 20 Ala. 777. The court should have rendered a decree in favor of Lapsley, as administrator of Garland Gardner, and left him to distribute the fund on final settlement of the whole estate. The administrator of Lucy should have been made a party to this suit, for the purpose of representing that estate on the taking of the account of the amount due it for this land, and the payments which had been made on it.—61 Ala. *supra*; *Waller v. Gibbs*, 10 Ala. 130–1; *Bell v. Hals*, 76 Ala. 546. Citing also, 39 Ala. 221.

LAPSLEY & NELSON, for appellees.—1. The purchase by V. H. Gardner of Mrs. Wyckoff's half interest in the lands, and surrendering her notes was a waste of the assets of the estate, and amounted to a *devastavit*. It was shown by Kelso's letter of 23d of June that he bought with a knowledge at least that the Wyckoff half interest was unpaid for. In fact no part of the purchase-money had been paid. The Probate Court has no authority for executing a deed till the purchase-money has been paid. Kelso was bound to take notice of the defects in Gardner's title.— *Wallace v. Nichol's Adm'r*, 56 Ala. 325. See also, *Ketchum v. Creagle*, 53 Ala. 227; *Corbitt v. Clamy*, 52 Ala. 480; *Wood v. Sullens*, 44 Ala. 686; *Broadnax v. Owen*, 60 Ala. 467. 2. The lien for the unpaid purchase-money rests on the whole land; no part, no interest can claim exemption from the whole lien—the lien is indivisible and inseparable. *Wallace v. Nichols, supra; Wood v. Sullens*, 44 Ala. 686. 3. As to parties. The surviving sisters and brother of Garland Gardner are made parties. Bat Smith Lucy is shown to have died, leaving no heirs other than the present parties to this suit. The legal title to the lands is before the court, and there is no need to make the administrator of Lucy a party. 4. There is no equity in the cross-bill of defendents. Whatever rights the complainants in the cross-bill have, they must have existed at the time of the filing of the bill (cross), and not accruing subsequently.—63 Ala. 595, and cases there cited.

STONE, C. J.—Lands of which Garland T. Gardner died seized, were sold for distribution under decree of the Probate Court. The sale was on a credit of one, two, and three years, maturing in 1861, 1862 and 1863. Virgil H. Gardner, one of the executors of Garland T. Gardner's will, together with another, became the purchasers, each being heir to the testator. By subsequent arrangement between the purchasers, Virgil H. Gardner became sole purchaser, and assumed the payment of

the entire purchase-money. The sale was reported and confirmed, and no question is raised on the regularity of the proceedings up to this point. Garland T. Gardner died without lineal descendants, never having been married. His next of kin, heirs at law at the time of his death, were Virgil H. Gardner, his brother, four living sisters, of whom Ann P. Weaver was one, and descendants of a deceased sister, Mrs. Goff, namely four living daughters, and Bat Smith Lucy, son and only descendant of another daughter of Mrs. Goff, who had also died in the lifetime of the testator. The said Virgil H. and his four living sisters were each entitled to one sixth of the estate, and the descendants of Mrs. Goff—her four living daughters and Bat Smith Lucy—were entitled to share equally in the remaining sixth. There were, therefore, ten heirs, entitled to share in the estate ; five full heirs, and five sub-heirs entitled collectively to the sixth of the estate. Bat Smith Lucy died before the present suit was instituted, childless and unmarried, leaving a will, valid as to personalty, but invalid as to realty, and appointing one Binford as executor. The will was probated and Binford qualified as executor. Florence Randolph, Helen Garner, Louisa Burton, and Elizabeth Nance, maternal aunts of said Bat Smith Lucy, were his heirs at law, so far as we are informed. Pending the present suit Binford died, and A. V. Gardner was administrator of said Lucy's estate when the decree was rendered.

The proceedings in the Probate Court, the sale under the order there obtained, report and confirmation of sale, and all proceedings thereafter taken in that court and pursuant to its orders, each and all failed to devest the legal title out of the heirs of Garland T. Gardner, for the reason that the purchase money had not been paid in full.—Code of 1876, § 2468 ; *Wood v. Sullens*, 44 Ala. 686 ; *Corbitt v. Chenny*, 51 Ala. 480 ; *Ketchum v. Creagh*, 52 Ala. 224 ; *Cruikshank v. Luttrell*, 67 Ala. 318. The successful maintenance of the present suit is proof conclusive that the title had not been devested ; for if it had been, this suit must have failed.

The legal title to the lands remaining in the heirs of Garland T. Gardner, in a suit like the present one to enforce the vendor's lien for unpaid purchase money, it was necessary to have all in whom the legal title had vested, before the court. The brother, Virgil H. Gardner, the four living sisters, and the four living children of the deceased sister, Mrs. Goff, were each and all made defendants to the bill. This brought in the entire legal title, if Bat Smith Lucy's four living aunts were and are his next of kin, and only next of kin. It is averred and not denied that Bat Smith Lucy had neither child, brother or sister, father or mother, nor maternal grandmother living.

[Gardner, as Adm'r, v. Kelso et al.]

It is not averred that he had no grandfather nor paternal grandmother. It is not averred that he had no paternal uncles or aunts, and it is not averred nor shown that his four maternal aunts are his only next of kin.—Code of 1876, § 2252; *Delanny v. Walker,* 9 Por. 697. This point, however, is not raised by the assignments of error, and it is not our purpose to make it a subject of reversal or ruling. We only refer to it that, if necessary, it may be looked to and considered in the final disposition of Bat Smith Lucy's share of the fund.

In taking the account, it was ascertained, reported, and the report confirmed, showing that Virgil H. Gardner, three of his living sisters, and two of Mrs. Goff's living daughters had been paid in full their share of the proceeds of the lands, the subject of this suit. It was also ascertained, reported, report disaffirmed in part, and decreed that Binford, executor of Bat Smith Lucy, had received a large part of the share of the land money to which he was entitled, leaving a very small sum to be paid to Lucy's representative. Whether such payment was in fact made to Binford was one of the contested questions in this cause, and is the main basis of the errors assigned in this court.

Not until January 7, 1885, was the personal representative of Bat Smith Lucy made a party in this cause, and it was done then in response to a petition filed by him, praying to be made a party. This was after the main litigation had been had, after the testimony had been taken and published, after the controlling legal principles had been settled by decrees, after the register had held his reference, examined testimony, and had made his report as to the final distribution of the fund. It was the last day but one before the final decree was rendered, from which this appeal is prosecuted, mainly in the Lucy interest.

It is manifest that Lucy's personal representative was a necessary party in taking the account of alleged distributions made to him, and the omission to have him before the court renders it necessary to reverse the decree of the chancellor. *Blackwell v. Blackwell,* 33 Ala. 57; *Wallace v. Nichols,* 56 Ala. 321; *Watson v. Oates,* 58 Ala. 647; *Dooley v. Villalonga,* 61 Ala. 129; *Bell v. Hall,* 76 Ala. 546.

In what is said last above, it is not our intention to affirm that in ruling as to the alleged payment made to Binford, the chancellor erred in weighing the testimony before him. We reverse on this point, solely on the ground that Bat Smith Lucy's representative had not the opportunity to cross-examine witnesses, and to introduce testimony, if he chose to do so.

The present bill was filed for the single purpose of enforcing a vendor's lien. It was filed and prosecuted to a final de-

cree in the name of the personal representative—administrator *de bonis non*—of Garland T. Gardner, the testator; and claims and obtains relief solely in complainant's representative capacity. The sole purpose apparent on the face of the proceedings was and is the reduction of the proceeds of the land to the possession of the administrator, as assets of the estate. It is not shown that Virgil H. Gardner, or his estate, has ever been brought to a settlement of his administration, nor is it shown how his accounts would stand, if his administration were brought to a settlement. It is averred in some of the pleadings that the partial distributions made by him were unequal, but in none of the testimony, accounts and findings of the register, or decretal orders of the chancellor, is that subject alluded to. It is manifest that any distribution of the land money, without any reference to prior, partial distributions, might operate very unequally, and unjustly to some of the next of kin. The final decree rendered in this cause was, in effect, a final settlement of the administration *de bonis non*, and it was made without either pleadings, proceedings, or even motion to have the settlement transferred to the Chancery Court. There was no account current filed, nor required to be filed, and no steps were taken looking to a settlement. We think it would establish a new and dangerous precedent to allow a settlement, made as this was, to stand.—*Worthy v. Lyon*, 18 Ala. 784; 1 Brick. Dig. 649, § 143; 3 *Id.* 337; §§ 90, 91. It should, however, be borne in mind, that the personal representative can not himself procure the removal of his settlement into the Chancery Court, without special equitable reasons.—1 Brick. Dig. 648, § 128; 1 *Id.* 334, § 65.

The effect of what we have declared is, that nothing which has been done is binding on the estate or heirs of Bat Smith Lucy, and that the decree of distribution stands for nothing.

Reversed and remanded.

