## C. L. ROBINSON ET AL., APPELLANTS, VS. THE SPRINGFIELD COMPANY, APPELLEE.

1. The assignor of a chose in action is not a necessary party to a bill in equity filed by the assignee thereof to recover the amount due thereon, if the assignment is absolute and the assignor retains no interest in the thing assigned.

2. The plaintiffs in a decree rendered against the mortgagors for a balance of the mortgage debt remaining unpaid after a foreclosure sale of the property covered by the mortgage and who have assigned such decree absolutely and retain no interest therein, are not necessary parties to a bill filed by the assignee of such decree for the purpose of subjecting to the payment thereof other property, the title to which it is alleged was placed in others by or at the instance of a defendant in said decree, prior to the rendition of such decree, to defraud the assignors out of the payment of the debt.

3. The fact that a creditor holds a mortgage on particular property of the debtor as security for his claim does not exclude the creditor or his assignee from the terms or protection of the Statute of Frauds, or from equitable relief against fraudulent dispositions of other property, held or paid for by the debtor, made for the purpose of avoiding the payment of such creditor.

4. The bill filed by such assignee to reach property alleged to have been disposed of in fraud of creditors, shows that C. L. R. and J. D. M., executed to W. M. and E. S. B., two promissory notes, in ordinary form, and a mortgage to secure the same, and signed the notes and mortgage "C. L. R. Trustee," and "J. D. M., Trustee," and the mortgage in stating the parties to it styles them "Trustees for H. D., J. D. M. and C. L. R." and after a decree of foreclosure and a sale of the mortgaged property the master reported the balance remaining due on the mortgage debt, and a decree was entered in such foreclosure suit, that W. M. B. and E. S. B. "do have and recover of and from the defendants, C. L. R. and J. D. M., Trustees, the said sum * * * and interest, etc., * * * and that execution do issue for the same," and the bill was demurred to for want of equity and on other grounds: *Held*, That the decree is a personal decree against the defendants therein, to be satisfied out of their individual estate,

and that there is nothing to change its character in the allegation of the bill, even assuming that its correctness as such could be inquired into in a collateral proceeding.

5. Where a decree of foreclosure and sale is alleged to be fraudulent, and to have been made for the purpose of defrauding, hindering and delaying creditors of the defendants therein, and it is alleged that no money was ever loaned as pretended by the papers, which are the basis of such decree, the Chancellor who rendered such decree may, upon a bill filed by the assignee of one of such creditors for the purpose of subjecting the property covered by the decree of foreclosure to the payment of his debt, and to set aside such decree as made to hinder and delay creditors, such assignee not being a party to such decree, enjoin the plaintiff in such decree of foreclosure, her agents and attorneys, from enforcing said decree. In such case the court acts upon the parties and not upon itself.

6. Where land in this State is conveyed by the vendor to a wife at the instance of her husband, who has paid the purchase money, and is held upon a secret trust for him, it cannot be sold under an execution against the husband, whether such execution be issued upon a judgment at law or upon a decree in equity rendered for the balance remaining unpaid after a sale of the mortgaged property in a foreclosure suit. Such land is an equitable asset, not liable to sale under such an execution.

7. Where a creditor seeks the aid of a court of equity against the real estate of his debtor, the title to which has been in such debtor, and is alleged to have been conveyed by him in fraud of his creditors, it is sufficient for the creditor to show a judgment at law, or, as equivalent thereto, a decree in equity for a balance remaining after a foreclosure sale of mortgaged property, creating a lien on such real estate; if, however, the title to such real estate has never been in the debtor, but is held by another on a secret trust for him, or is an equitable asset not liable to be sold under an execution at law, there must be an execution sued out and pursued to every available extent and returned unsatisfied.

8. A bill may be filed to remove from real estate liable to sale under execution at law, fraudulent incumbrances or conveyances as soon as judgment is obtained without proceeding to obtain satisfaction out of other property.

9. The effect on a suit in equity against several defendants of a dismissal thereof as to one defendant under Rule 55 of the Equity

Rules, on account of the failure of the complainant to set the demurrer of such defendant down for a hearing, is not a ground of a demurrer in favor of other defendants to such bill, and cannot be considered in the Supreme Court upon the argument of a demurrer interposed by other defendants, and particularly when it does not appear to have been assigned as a ground in the demurrer.

10. Where one general right is claimed in a bill it is not multifarious, even though the defendants have separate and distinct rights. Where the several conveyances and other alleged fraudulent acts or contrivances against which relief is prayed purport to be, some directly to one person, and another to a trustee in trust for the same person, it is not multifarious to join the several matters, and all parties thereto, in one bill. But where there is also included in said bill statements showing a cloud to be cast upon the complainant's real estate by one of such contrivances, and there is a prayer that such real estate be relieved of the same, a demurrer for multifariousness will be sustained.

11. Where the bill of complaint alleges that property charged to have been conveyed to, or vested in a wife or others, in fraud of the husband's creditors, is still, in fact, the husband's property, and that so far as vested in the wife or others it is vested in her or them in trust for him, and that he has asserted entire and exclusive management and control of the property and dealt in all respects with it as his own, except for his own fraudulent ends he has used her and their names to conceal and cover the title from his creditors, thus showing an existing and recognized trust for his benefit, a demurrer of such husband, wife and others, on the ground of laches or of statutory bar because of the date of the conveyances, will be overruled.

12. If upon a demurrer to the whole bill it appear that the plaintiff is, entitled to relief as to some of the matters set out in the bill, but, not as to all, and the bill is multifarious, the demurrer should be sustained.

This is an appeal from an order of the Circuit Court for Duval county overruling a demurrer to a bill in chancery.

The bill was filed December 12, 1882, by the appellee, a body corporate, against Calvin L. Robinson and Joseph D. Mitchell, as Trustees and in their own right, Elizabeth S.

Robinson, and Lucretia R. Foss, as Trustee and in her own right, Harvey Durkee and William L. Seymour, and against J. C. Marcy, Jr., as Special Master in Chancery, and alleges:

1st. That Calvin L. Robinson and Mitchell, on October 26, 1869, executed to Wm. M. Bostwick and wife two promissory notes, each for the sum of $5,735, payable respectively one and two years after date to their order, and to secure the same, executed on the same day to Bostwick and wife a deed of mortgage, which, on the same day, was recorded in the records of Duval county, in this State. The notes and mortgage were signed " Joseph D. Mitchell, Trustee," "C. L. Robinson, Trustee." The mortgage styles Robinson and Mitchell, " Trustees of Harvey Durkee, Joseph D. Mitchell and Calvin L. Robinson," the bill alleging it to be a fact, and that it is recited in the mortgage " that said Robinson and Mitchell are Trustees in equal interest for themselves and the defendant, Harvey Durkee."

2d. That the notes and mortgage were given to secure the payment of part of the purchase money for the mortgaged premises, (lands in said county) conveyed on the same day by Bostwick and wife " to said Mitchell and Robinson, Trustees."

3d. That the notes not having been paid at maturity, a bill to foreclose the mortgage was filed by Bostwick and wife against Robinson and Mitchell, Trustees, in said Duval Circuit Court, on the 12th of December, 1874, and on the 4th day of October, 1879, a decree for $14,753.31 was made for the complainants in said suit, and a sale of the mortgaged property by the court, and on the first Monday in December, 1879, the property was sold to Bostwick for $3,000, and on August 13th, 1880, " a further order was made in the suit by which the balance due on the decree, to wit: $12.174.12, was made a decree against the defend-

ants, Mitchell and Robinson, Trustees." This decree, after reciting that it appears by the report of the Special Master that the above balance is due to Bostwick and wife over and above the proceeds of the sale of the mortgaged prem- ises, continues as follows: " Now, on motion of Fleming & Daniel, plaintiffs' solicitors, it is ordered, adjudged and de- creed that the plaintiffs, William M. Bostwick and Eliza S. Bostwick, do have and recover of and from the defend- ants, Calvin L. Robinson and Joseph D. Mitchell, Trustees, the said sum of twelve thousand one hundred and seventy- four dollars and twelve cents, with legal interest thereon from the 16th day of December, 1879, and that execution do issue for the same."

4th. That execution has issued on said last named de- cree, but no part thereof has been paid.

5th. That on July 29th, 1882, Bostwick and wife as- signed said last named decree to the complainant, which is the owner thereof. A copy of the assignment is annexed to the bill as an exhibit. It purports to " sell, assign and transfer " to the complainant the said decree of August 13th, 1880, " for its sole and proper use and benefit, here- by authorizing the said Springfield Company to collect and enforce payment thereof in our names or otherwise, but at its own costs and charges."

6th. That said mortgaged property has been exhausted and said Mitchell and Robinson have no other property in like trust except as hereinafter alleged.

7th. That " inasmuch as Mitchell and Robinson, by their said mortgage deed, set forth that they are trustees for themselves, thus uniting in themselves the equitable and legal relations, they are personally bound by said decree to the extent at least of two-thirds of the amount due there- on."

8th. That Mitchell owns a valuable homestead of a half

acre in Jacksonville, and other property, real and personal, within the jurisdiction of the court, but the same is encumbered with mortgage and other liens, and the equity of redemption would bring but little, if any, price on a forced sale under execution."

9th. That Calvin L. Robinson, soon after making said notes and mortgage to Bostwick and wife, commenced, and has continued, to the filing of the bill, a series of fraudulent transactions and transfers of title by which he has vested or attempted to vest in the defendant, Elizabeth S., his wife, and in said Lucretia R. Foss, (Mrs. Robinson's sister, and a resident for many years in R's. family,) and said Seymour, (the half brother of Mrs. Robinson,) all his property, amounting in the aggregate to the value of over $50,-000; that Mrs. Robinson, Miss Foss and Seymour had no money or property of their own, and paid no money or other valuable consideration for the property of which the legal title at the instance and by the fraudulent acts and transactions of Calvin L. has been vested or attempted to be vested in them; that all the property, the legal title to which is held by or appears in their names, was purchased or paid for with money or other valuable consideration belonging to Calvin L., and, in fact, is his property, and so far as the title thereto is vested in Mrs. Robinson, Miss Foss and Seymour, it is in trust for Calvin and subject to the payment of said judgment.

10th. That without a discovery from defendants, complainant cannot state with certainty all the land and other property, the title to which has been, or is now, in the names of Mrs. Robinson, Miss Foss and Seymour, by the fraudulent acts and contrivances of Calvin L. That said lands, as complainants are informed and believe, lie in Duval, Nassau, St. Johns and Clay counties, and elsewhere within

the jurisdiction of the court. A schedule of the lands lying in Duval county is attached to the bill.

11th. To specify some of the fraudulent acts and contrivances of the defendants to defraud complainant's assignors, Bostwick and wife: that on May 6, 1873, C. L. R. being the owner in fee of Lot 5, of Block 43, and Lot 3, of Block 49, and Lots 1 and 2, of Block 56, in Jacksonville, executed a deed of conveyance thereof to Miss Foss, "the consideration named in the deed" being $3,400, and she conveyed the same to Mrs. Robinson, the same consideration being named in this deed, and it bearing date May 7, 1873; that on the —— day of November, 1872, Calvin L. being the owner of Lot 3, Sec. 6, T. 2, S., R. 27, E., 64 acres, executed a deed of conveyance thereof to Miss Foss, and she by deed dated ——, ——, attempted to convey the same property to Mrs. Robinson; that no consideration passed to Calvin L. or Lucretia for said conveyances, but he was at that time largely in debt. They were made to defraud Bostwick and wife, and his other creditors, and place the property beyond their reach, which conveyances are fraudulent and void against complainant, and said property, except Lot 3, of Block 49, is subject to complainant's judgment lien.

That Lot 6, of Block 70, in Jacksonville, was conveyed to Mrs. Robinson by the Sheriff of Duval county, on October 12, 1872, by virtue of a decree of foreclosure in favor of Calvin L. against Rosa Gingerger *et al.*, on a note and mortgage to Calvin L.; that no money was paid for the property by Mrs. R., but the same was bid off in her name by him in part satisfaction of the decree, in order to prevent the same from being subjected to his debts.

That another tract of 75 acres, (part of the Hendricks or Haddock Grant,) was mortgaged to Calvin by Lucius

14

A. Hardee, and was thereafter, April 6, 1871, sold and conveyed by the Assignee in Bankruptcy of said Hardee, (the consideration for the conveyance being the said mortgage debt,) to C. L. Robinson, Mrs. Robinson actually paying nothing, but said Calvin L. procured the title to be placed in her name to defraud Bostwick and wife, and others of his creditors, and she holds the title thereto, and to said Lot 6, Block 70, in trust for the benefit of said Calvin.

That Lot 1, Block 55, Jacksonville, was conveyed to Mrs. Robinson by Porter and wife, by deed dated April 19, 1873 ; that Lot 6, of Block 53, Jacksonville, was conveyed by Hemming, as commissioner, to her by deed of same date, and these lots were paid for by Calvin L., and the title placed in Mrs. Robinson, in fraud of Calvin's creditors, and such title is held by her as trustee, and for the benefit of Calvin, and his equitable interest therein is subject to complainant's said judgment.

12th. That Calvin has had and asserted the entire and exclusive management and control of the lands so fraudulently conveyed to his wife, and Miss Foss and Seymour, has negotiated the purchase and sale thereof, paid the taxes thereon and dealt in all respects with said land as his own, excepting only that for his own fraudulent ends he used the name of his wife, and Lucretia Foss and Seymour, to conceal and cover the title from his creditors.

13th. That there are many other creditors of Calvin, some of whom have placed their claims in judgment, and who, complainant prays, may be required, if they avail themselves of this suit, to contribute to the same in proportion to their several interests in the result.

14th. That among other deceptive and fraudulent acts committed by said Calvin, to cover and conceal his real title and interest in said lands, he, on the 27th of June, 1874, prepared, and had executed by himself and the defendant

Mitchell, a deed of conveyance to Miss Foss of certain lands in Duval county, being part of the lands conveyed to Mitchell and Robinson by Bostwick and wife, October 26, 1869, viz: 6 blocks and 7 lots in Springfield, a suburb of Jacksonville, the deed being signed " C. L. Robinson, Trustee, J. D. Mitchell, Trustee," and after being acknowledged was recorded in Duval county records, December 4, 1874; and afterwards, on the 30th of June, 1874, Miss Foss, Mitchell and Calvin entered into a written agreement under seal in the nature of the defeasance to said deed, in which it is recited that whereas, Elizabeth S. Robinson of said county has loaned to the said trustees the sum of two thousand dollars, and as security for the said sum the said trustees have this day executed to the said L. R. Foss a a warranty deed of certain lots and blocks in Springfield." Said last stated instrument was recorded February 19th, 1879, and a copy is annexed to the bill. (It provides that if the said trustees shall pay said sum with interest at $1\frac{1}{2}$ per cent. per month, on or before January 1st, 1875, and all costs, expenses and reasonable attorney's fees in case of foreclosure, said deed shall be void.) That Miss Foss, on June 23, 1882, filed a bill in chancery, as trustee for Mrs. Robinson in said Circuit Court against Mitchell and Robinson, " trustees for themselves and Harvey Durkee," praying that said deed and defeasance be treated as a mortgage and foreclosed. A decree has been rendered in such suit, appointing J. C. Marcy, Jr., Special Master, with power and direction to sell said land for the purpose of paying the amount found by such decree to be due Miss Foss as trustee for Mrs. Robinson. A copy of such special Master's advertisement of a sale of blocks 4, 6, 8 and 43, and lots 1, 3, 4, 7, 11, 15 and 16, in block 2, in Springfield, to take place December 4, 1882, is annexed to the bill. That by the terms of the mortgage from Mitchell and Robinson,

trustees, to Bostwick and wife, provision was made on certain payments and conditions therein expressed for the release by B. and wife of parcels of the mortgaged premises, and B. and wife did, at Robinson's request, on payment by R., in person, to B., of $1,100, release by deed, of May 28, 1874, to Miss Foss, Lots 1. 3, 7, 11 and 15, Block 2, and Block 6, they being part of the lands described in the deed of June 27, 1874, from Mitchell and Robinson to Miss Foss. That other of said lands, viz: Lot 16, Block 2, and Blocks 4 and 43 were not released from the operation of the said mortgage. Lot 16, Block 2, and Blocks 4 and 43 were sold to Bostwick under the decree of foreclosure in favor of himself and wife against M. & R., trustees, and have since become and are now complainant's property, and not subject in anywise to the lien of the pretented mortgage to Miss Foss. A sale of said last mentioned lands will cast a cloud over complainant's title to the same. The lands embraced in the mortgage from Mitchell and Robinson, trustees, to Miss Foss, if the same be of any valid force and effect, and not void by reason of the fraud of R. and his confederates, should not be sold under said decree; they are worth greatly more than the amount of said decree, and if the court, on the final hearing, should hold that said deed and defeasance are good and valid, and that the $2,000 was loaned by Mrs. R., and that Lucretia, as trustee for Mrs. R. is entitled to be paid, "complainant is prepared and now offers to pay the same, the court staying the sale by said Master under said Foss decree, and holding said lands subject to the payment of the amount due" complainant herein on the Bostwick and wife decree. Complainant avers and charges, however, that neither Miss Foss nor Mrs. Robinson have any beneficial interest in said mortgage and the decree thereon; the $2,000, if paid at all, belonged to Calvin, the release from Bostwick and wife

was originally made to M. & R., trustees, and afterwards changed, at Calvin's request, with the purpose and intention on his part of covering so much of his property from his creditors, and in truth and equity all the lands embraced in said notice and decree in the Foss suit, and so released, are subject to payment of complainant's said claim.

15th. There is strong reason to fear, and complainant apprehends and fears that defendants, if not restrained, will convey, mortgage or otherwise alienate or complicate the title to the lands which complainant claims to be subject in equity to the amount due to complainant.

16th. The interrogatories inquire as to the relation of the parties defendant to each other, what property they own, what lands they have acquired since October 26, 1869, whether they hold title for their own use and benefit or for some other person or persons by express or secret trust, for whom and what conditions and uses, for a description of the lands, the consideration paid, by whom paid, whose money and what kind of money was paid, if money belonged to them of whom, where and what way it was got, and call on them to state all about the consideration, whatever it was, and to state lands they have conveyed, mortgaged or leased since October 26, 1869, the consideration therefor, &c., &c., how paid, and what was done with the money or other consideration.

17th. The bill prays that Miss Foss, as trustee for Mrs. Robinson, be enjoined from enforcing or attempting to enfore the decree obtained against Mitchell and Robinson, October 14, 1882, by sale or otherwise, and the master, Marcy, be restrained from selling until the further order of the court, and that Robinson, his wife, Miss Foss and Seymour, be restrained from alienating or encumbering " all or any part of the property to which they have or claim to have any right, title or interest, either in law or equity, which has

been acquired since the 26th of October, 1869, and for discovery as to the nature and source of their title to all such property " now or since the 26th day of October, 1869, owned or claimed by them ; and that the deed of June 27, 1874, from R. & M., Trustees, to Miss Foss, be decreed fraudulent and void, or if the same be sustained that complainant's title to blocks 4 and 43 and lot 16, block 2, be held free from all lien or encumbrance of said deed, and that the remaining lots and blocks described therein be decreed as held by Miss Foss in trust for Robinson, and subject to the payment of complainant's claim, or, if it is held that the deed was made in good faith to secure the $2,000, that complainant be permitted to pay the amount due on said decree, and the mortgaged property be subjected to payment of complainant's claim ; or that, in case it is held " as last above stated, that so much of the property conveyed by Mitchell and Robinson, trustees, to Lucretia to secure the payment of said lien of $2,000, as was released by said Bostwick and wife, * * * be sold, the amount found to be due Lucretia, trustee, first paid, and the residue paid to complainant ;" and that for any balance due on said Bostwick and wife decree owned by complainant, the defendants, Robinson, Mitchell and Durkee, be held personally bound, and that all lands and other property, the title to which, at the time of the filing of this bill, was in the name of Mrs. Robinson, Miss Foss, Seymour, or any other person hereafter made party, which has been acquired or paid for with money or other valuable consideration belonging to Robinson, or otherwise held in trust for him, be subjected to the payment of complainant's said claim, and then follows a prayer for general relief.

The defendants appeared, by solicitors, and afterwards, on February 6, 1883, the Chancellor granted an injunction against Marcy, as master, Robinson and Mitchell, trustees,

and Miss Foss, from selling blocks 4, 6, 8, 43, lots 1, 3, 4, 7, 11, 15, 16, in block 2, Springfield, till the further order of the court.

On February 5th, 1883, Mitchell filed a demurrer to the bill as being multifarious. The affidavit to the demurrer is made by H. A. Pattison, who swears he "is the solicitor for J. D. Mitchell; that Joseph D. Mitchell is absent from the State, and has been since the filing of complainant's bill, and that said *bill* is not interposed for delay." The certificate that the demurrer was not interposed for delay was added under an order permitting it, made by the Chancellor February 9th, 1883.

On July 2d, 1883, Mitchell moved to dismiss the bill as to himself, because the demurrer had not been "set" in compliance with Equity Rule 55, and the clerk entered an order dismissing the bill "for want of setting down defendants' demurrer pursuant to Rule 55."

Robinson and wife, Miss Foss and Seymour, demur to the bill, "and for cause of demurrer show—

"1st. That the said complainant has not by its said bill made such a case as entitle it in a court of equity to any discovery or relief from or against" them.

2d. Complainant, as assignee of a decree, has no title on which it can maintain said bill.

3d. Bostwick and wife as mortgagees, and complainant as their successor and assignee, are not creditors in the meaning of the statute, and if defendants made any conveyances or purchases as alleged they are not void as to complainant.

4th. Complainant having no judgment lien on any of defendants' own property, as shown by the bill, complainant cannot inquire into any conveyances by these defendants of their property.

5th. A decree in equity pronounced in a distinct and sep-

arate suit will not be enjoined or altered, nor will the execution of such a decree be enjoined at the prayer of strangers, in another suit in equity.

6th. The bill is argumentative and alleges conclusions of law, without distinctly setting out facts of complainant's claim. Alleged fraudulent conveyances are not set out with definiteness, nor are the other creditors of C. L. Robinson named, nor are such acts as constitute an intent to defraud creditors alleged with certainty in the bill.

7th. The bill is multifarious.

8th. There is no allegation in the bill that complainant has exhausted its remedy by levy and sale under its decree, and has not shown itself entitled to discovery.

The demurrer was set down, and upon argument was overruled by order of February 27, 1884.

Defendants appeal.

*C. P. & J. C. Cooper* for Appellants.

*Fleming & Daniel* for Appellees.

Mr. Justice Raney delivered the opinion of the court:

I. The first point made by appellants is that the appellee cannot maintain this bill in its own name. In 1st Daniel's C. P. & P., 198, it is said: "Where the subject matter in litigation is a legal chose in action which has been the subject of assignment, the assignor, or if dead his personal representative, should be a party ; for, as an assignment of a chose in action is not recognized in a court of law, and is only considered good in equity, the recovery in equity by the assignee would be no answer to an action at law by the assignor in whom the legal right to sue still remains, and who might exercise it to the prejudice of the party liable

who would have to resort to a bill in equity to restrain such assignor's proceedings." Upon this ground " where a bill was filed by the assignees of a judgment it was held that the plaintiffs could not go on with that part of their case which sought payment of the debt." In England, Virginia, Kentucky, North Carolina and Indiana the assignors were held to be necessary parties in the following cases : Cathcart vs. Lewis, 1 Vesey, Jr., 463 ; Corbin vs. Emerson, 10 Leigh, 697 ; Allen and Wife vs. Crockett, 4 Bibb, 240 ; Carter vs. Jones, 5 Iredell, 196 ; Elderkin vs. Shultz, 2 Blackf., 345.

The true principle, according to Judge Story, is that where the assignment is absolute and unconditional, leaving no equitable interest whatever in the assignor, and the extent and validity of the assignment is not doubted or denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the latter a party ; and at most, in such a case he is a mere nominal or formal party. Story's Eq. Pl., §153. Where the assignment is not absolute, and the assignor retains an interest in the security assigned, he is a necessary party " because he is interested, and particularly in taking an account of what is due " on it. Miller vs. Henderson, 2 Stock., 320. In Bruen vs. Crane, 2 N. J. Eq., 347, which was a bill to foreclose a mortgage, Chancellor Pennington, in overruling the demurrer for want of the assignor as a party defendant, the assignee thereof being a party, said : " I can see no stronger reason for making the assignor of a judgment a party than the mortgagor, who has parted with all his interest in the lands. The multiplication of parties should be avoided whenever they have no interest at stake in the cause ; it can only tend to create expense and embarrassment." Mr. Jones, in his work on mortgages, (§1373) says that the assignor is not a *proper* party where the assignment is abso-

lute and the mortgagor retains no further interest. In Walker vs. Bank, 6 Ala., 452; Garrett vs. Pickett, 15 Ind., 485 ; McGuffey vs. Finley, 20 Ohio, 474, the assignor is held not to be a *necessary* party ; and in Newman vs. Chapman, 2 Randolph, 93, the Virginia Court of Appeals held that " the assignee of a mortgage may maintain a suit to foreclose without making his assignor a party, if the legal title has been conveyed to him." In Morey vs. Forsyth *et al.*, Walker's C. R., 465, it was held that an assignor of a judgment, or *chose in action* on which a judgment has been obtained in the name of the assignor, is not a *necessary* party to a judgment creditor's bill filed by the assignee. " If," says the Chancellor, " there be a controversy between the assignor and assignee touching the assignment, the court will direct the assignor to be made a party for the protection of all ; otherwise he need not be a party." In Ward vs. Van Bokkelin, 2 Paige, 289, a suit by an assignee of a judgment to set aside a fraudulent conveyance, where the same doctrine is maintained, it is held as in Morey vs. Forsyth *et al.*, that an assignee of a chose in action is now considered the real party as well in law as in equity, and the defendant may plead and give in evidence any matter of defence which exists in his favor, against the assignee. In Kendig vs. Giles, 9 Fla., 278, it is held that where one sues for the use of another, the former is the nominal, and the latter the real plaintiff. The doctrine that the assignor is not a necessary party is held in Illinois, Maine, Ohio and Vermont; and we understand the cases of Ensign vs. Kellog, 4 Pick., 1, and Montague vs. Lobdell, 11 Cush., 111, as supporting the same rule. 32 Me., 343 ; 21 Ill., 203 ; 19 Vt., 496 ; 20 Ohio, 474 ; 3 Paige, 466. We see nothing in Carrier vs. Howard, 14 Gray, in conflict with it. In Polk vs. Gallant, 2 Dev. & Battle's Eq., 395, (A. D. 1839,) an assignor was held not to be a necessary party to a bill

against an assignee where it appears from both the bill and answer that all the interest of the assignor had been transferred ; this, however, we perhaps should add is stated in a note to this case, citing 5 Iredell, 196, and Busbee Eq., 196, to be an exception to the general rule in North Carolina.   In Kentucky, (Cobb vs. Thompson, 1 A. K. Marshall, 378, 508,) an assignee of a judgement was permitted to sue in equity in his own name, there being no administration on the assignor's estate.

We consider the rule dispensing with the assignor as a necessary party where the assignment is absolute, and no interest remains in him, as appears to be the case at bar, to be the better one, and adopt it.   Such we understand to have been the view of this court in Betton vs. Williams, 4 Fla., 11.   Moreover, since the passage of chapter 3241, Laws of Florida, authorizing civil actions at law to be maintained in the name of the real party in interest, we do not think it can be held in this State that " an assignment of a chose in action is not recognized in a court of law."

The reason urged that this suit should be in the name of the assignor because if assignees get a decree in their name a satisfaction of record of this decree will not appear of record to be any satisfaction of the Bostwick decree—does not strike us with much force.   Moreover a decree in this cause subjecting to the payment of the Bostwick decree lands standing in the name of any of the defendants, would, we think, mention that decree, or provide in effect at least that the lands should be sold under that decree, or that moneys arising from the sale of such lands should be applied to the payment thereof, and on such application being made that decree should be satisfied on the record.

II. The second point urged by appellants is: " It appears from the record that at the time the conveyances complained of as fraudulent were made, Bostwick and wife, the

assignors, held a mortgage on the land conveyed by them to Robinson and Mitchell, trustees, and mortgaged back to them by such trustees, for the credit installments of the purchase money, of which credit installments the decree which the complainant is now seeking payment of constitutes a part." They contend that the Statute of Frauds is only for the protection of *unsecured* creditors, and that " a voluntary conveyance " could not be considered as in fraud of a creditor for a balance of purchase money secured by a mortgage, " because he has got his security of his own choosing ample and full to protect him." " A mortgagee," they say, " is not in the meaning of the Statute of Frauds," and " there can be no intent to defraud him of his debt which is already secured."

The Statute of Frauds is by its terms for the protection of creditors or others * * intended to be delayed, hindered or defrauded, * their heirs, successors, administrators and assigns." When it shall be shown that the alleged fraudulent conveyances and acts are merely voluntary conveyances, and that the creditor's security is " ample and full to protect him," it will be an apt time to decide the law applicable to such a case, but it would be premature to do so in a case where it is not only specially alleged that the conveyances were made for the purpose of defrauding Bostwick and wife, but also that the property conveyed is still in fact the property of Robinson, and the purpose of the bill is to subject it to the debt, and the security has been sold and a large balance remains unpaid, and the bill is demurred to. We do not see that it lies in the mouth of the demurrants to question upon argument either the fraudulent acts or intent alleged, or the damage to complainant as assignee of the decree. In the case of Barrow vs. Bailey, Adm'r of Bellamy, 5 Fla., 9, the judgment, of which satisfaction was sought, represented an un-

paid balance of purchase money of land sold to the frau-. dulent grantor, and the legal title of this land was, at the time the conveyance assailed was made, still in Bellamy, to whose estate the judgment belonged.

The cases cited by appellant are not in point. Seymour vs. Wilson, 19 N. Y., 417 ; Reed vs. Mullins, 48 Mo., 344, have no bearing that we perceive. Fetrow vs. Merriwether, 53 Ill., 275, where the mortgagee was in possession, and no-tice of the mortgagee was not questioned, decides that it did not concern a mortgagee that his mortgagor had sub-. sequently conveyed the equity of redemption *of the mort-. gaged property* to a third person for a full consideration, gratuitously or for the purpose of hindering and delaying his creditors, as the conveyance could not affect the mort-. gagee's rights. If the mortgage debt is not paid, the holder of the mortgage can foreclose and sell against either the mortgagor or such assignee of the equity of redemp-tion. In Hodson vs. Treat, 7 Wis., where the mortgage was registered, it was held that a conveyance by a mortga-. gor of his equity of redemption, though fraudulent and void as to his creeitors is not void as to his mortgagee, and for the same reasons as are given in the Illinois case. We. do not see anything in the doctrine of these cases from, which to infer that a creditor who has foreclosed and sold the equity of redemption and has a decree for the balance. of his claim, is not still a creditor and one that might have. been injured prior to such foreclosure by either a voluntary or an expressly fraudulent conveyance of his debtor's other property, nor anything which denies such creditor the right to go into equity to reach property standing in the. name of others, but really belonging to the debtor. It is, true that in Bump on Fraudulent Conveyances, page 14, in a paragraph discussing the debtors being held to good faith, it is said : " If they (the creditors) take no specific.

security from him, they trust him upon the general credit of his property, and a confidence that he will not diminish it to their prejudice. They therefore have an equitable claim upon and interest in it." The authorities cited are Eppes vs. Randolph, 2 Call, 103, and Seymour vs. Wilson, *supra*. The language quoted is found, with a slight change in the last sentence, in the former case, but there is nothing in either case to support the inference sought to be drawn from it by appellants, nor do we think it true that because creditors take security they do not also " trust upon the general credit of the debtor's property and a confidence that he will not diminish it to their prejudice ; " nor that anything of the kind was meant in the second Randolph case, or by Mr. Bump.

III. The third point urged is that there is no personal judgment against the defendant, Calvin L. Robinson, and that " therefore there is no right to inquire into his voluntary conveyances." The demurrer, of course, admits that the decree of August 13, 1880, of which a copy is in the record, was actually entered, and we must determine from its face what the character and effect of it is. It is not contended that the correctness of it, as justified by the pleadings and proceedings on which it is based, can be inquired into here. In Daniel on Negotiable Instruments, §271, it is said : " Guardians cannot bind their ward's estate, nor trustees the estate of their *cestui que trust* by bills or notes, and hence though they sign themselves as guardians or trustees they are personally bound, because otherwise the instrument would be invalid." See also §262, and 5 Mass., 299 ; 8 Cow., 31 ; 6 Mass., 58 ; 1 S. & M., 666. Where a party signs a note with the addition to his name of the word " trustee," he is personally liable ; nor can evidence be admitted to show that at the time of the execution of the note there was a parol agreement that he

should not be personally liable, but the note was to be paid out of the trust fund.   Conner vs. Clark, 12 Cal., 168.

E. F. A., executrix of J. S. A., made a note by which she promised to pay H. S. H., or his order, $1,097 on demand, &c., and signed it E. F. A., executrix of J. S. A., and it was held that this was the note of E. F. A., and did not bind J. S. A.'s estate.   Higgins vs. Driggs, Administrator, 21 Fla., 103 ; Gregory vs. Lee, 33 Texas, 813 ; Harrison vs. McClellan, 57 Ga., 531 ; Wisdom vs. Beeker, 52 Ill., 342 ; Sumner vs. Williams, 8 Mass., 162 ; Davis vs. French, 21 Maine, 21 ; Cornthwaite vs. First, N. B., 57 Ind., 268.

" Where an executor accepts a draft drawn upon him by a distributee of the estate, even though the acceptor has money in his hands in his fiduciary capacity belonging to the drawer, the estate will not be bound, but only the executor individually.   52 Ill., 342.   In Pinney vs. Administrators of Johnson, 8 Wend., 500, the court say : " It seems to be well settled upon authority that a judgment upon a bond or other security given by an administrator or executor, though in his representative character, does not bind the estate which he represents, nor can it be taken upon the execution issued thereon.   The description of the defendants in the bond as executors or administrators is surplusage, and they are chargeable upon such a bond and judgment only in their own right.   It is their personal contract and whatever their rights may be under such a bond or judgment if paid, it is not a legal judgment or debt against such estate, and cannot be pleaded as such." In Tinsley vs. Lee, 51 Ga., 482, it was held that a decree rendered against the defendant on a bill in equity, with the word " executor " added to his name without more, binds his personal goods and chattels, and that an execution to be levied of the goods, &c., of Thomas W. Howell, ex-

ecutor of Wm. Tinsley, deceased, was supported by such a decree and properly leviable on Howell's individual estate. In Cooper, Ex., vs. Livingston, 19 Fla., 684, it is held that if the action be against the defendant, executor upon a note of the decedent, the judgment should be that the plaintiff recover against the defendant " as executor, &c., * * to be made of the goods, &c., and of the estate of the deceased, and that he have execution therefor," and not against the defendant generally. In Hardy vs. Call, 16 Mass., 530, the referee reported that Hardy, whom Call, as administrator of the goods and estate of Geo. Palmer, sued, should recover against Call " in his said capacity of administrator," and judgment was entered up in the same language, and it was held not to be a judgment against the goods and the estate of the intestate. The court say: " The words descriptive of the capacity in which the plaintiff in the original suit prosecuted, have no legal effect and may be considered as surplusage. But whether so considered or not it is very clear that no judgment has been rendered against the goods and estate of Palmer, the intestate."

Confining our view to the decree as set forth in the record we see nothing in it professing to bind any trust property or to bind anything but the defendants therein, and them personally; and the same is the case, if we permit ourselves to consider the whole record. The use of the word "trustees" is not effectual to provide for satisfaction out of the property of any one but Robinson and Mitchell. We find nothing in the record to deprive either this decree, or the notes as described assuming we may consider them, of their personal obligation on the makers. The word "Trustees," in our judgment, no more changes the effect of the judgment than it does that of the notes. Strike it out and no change is made. The decisions treat it as surplusage. Trustees and other fiduciaries may exempt themselves from

personal responsibility by using explicit words to show such intention, but in the absence of such words they are held bound.    There is no language here confining the agreement to pay out of the trust estate.    12 Cal., 168 ; Story on Promissory Notes, §63.    Assuming that we are not concluded by the decree as to what was the legal effect of the promissory notes, we still do not see that the interest of Durkee in the land purchased from Bostwick and wife changed the effect of the notes as the personal obligation of Robinson and Mitchell.    A conveyance of land to them and another or for the benefit of themselves and another was as good a consideration as if made to them only or for their benefit, independent of Durkee.

IV. The fourth point is stated thus :  " This is an independent bill in equity praying to have the former decree against Robinson and Mitchell declared a personal decree and asking for an injunction to restrain the master from carrying out a third and different chancery decree," and it is urged that equity will not enjoin another equity suit on an independent bill, but that it must be done by petition in the same suit.

It is not sought in this case to change the form of the decree of August 13, 1880, or to give to it any other character than the law gives to it, but simply to obtain satisfaction of it, if it be a personal decree, and of which we think there is no doubt.

In Daniel's Chancery Pleading and Practice, 1567, (Cooper's Edition) we find that " proceedings in one suit in equity may be restrained by an injunction in another suit," and the case is put of a stakeholder who has been sued by one person claiming an interest without making another interested a party, filing a bill of interpleader and restraining proceedings in the former suit.    In a note, it is said that

the practice is not limited to interpleader suits, but has often been applied to the staying of concurrent suits in equity after decree in one suit and has prevailed in the enjoining of suits in the same chancery court. However, in the same note it is stated that Hoffman's Chancery Practice lays down the rule that an injunction is not the proper mode of staying proceedings under a bill or decree, but that the court should be applied to by petition for an order, " citing Dyckman vs. Kernochan, 2 Paige, 26, and Newton vs. Douglass, an unreported case." In Dyckman vs. Kernochan, the former purchased *pendente lite* all of McChain's interest in the mortgaged property, but it did not appear that McC. or Seymour under whom he claimed, ever had any interest in the premises decreed to be sold. The Chancellor said that even if any interest existed in McC. or his grantee, which rendered the decree irregular as against that right after the death of the former, the assignee had not pursued the proper course to correct the irregularity. " This is not *a bill of review*, and it is not the practice of this court to permit an injunction bill to be filed either by *parties, or previous to the proceedings in a former suit*, to restrain proceedings under the decree. The court can restrain its own officers without an original bill being filed for that purpose. The *master* went beyond his authority in allowing an injunction to restrain the defendants from carrying into effect *a decree* of this court. If any order was proper the present complainant should have applied by petition to the Chancellor." In Smith vs. Am. L. I. & T. Co., Clarke's Chancery Reports, the Vice-Chancellor held that an injunction would not lie by bill to stay proceedings under a bill or decree, where the application was made by a *stranger* to the original suit, but that a petition in the original suit was the proper remedy. " As a general rule," he says, "an injunction is not the proper mode, whether the application

be by parties or privies, or by a stranger who has filed a new bill. There is reason in this rule," for under "a contrary rule it would be difficult in some cases to foresee any termination to litigation." In Greenlee vs. McDowell, 4 Iredell Eq., 481, it is held that an injunction to restrain the execution of a decree in chancery cannot be granted. Here the purpose was to review a decree *pro confesso*, and for leave to answer and for an injunction restraining the collection of the money decreed to be paid. It is said in the opinion that "an application to a court of equity to restrain its own proceedings is certainly a novelty," and the court is "not apprised of any precedent for such a bill," and again, "when a court of equity is called on to enjoin its own proceedings it is asked to pronounce that to be iniquitous and wrong which it has already declared to be right and proper, and when it made this latter declaration it was perfectly competent to declare it wrong if it were so." In Medlock vs. Cogburn, 1 Rich. Eq., 477, a bill was filed to enjoin Cogburn from acting as the committee of Medlock, who had been adjudged upon inquisition *de lunatico* to be incapable of managing her affairs. It was held that the proper course was to apply for leave to traverse the inquisition The bill was treated as such an application, though dismissed *as a bill*, and an order made for leave to traverse at the "next sitting of the General Sessions for Edgefield District." It is true in this case it is said, "the proceeding is altogether irregular. The court does not enjoin its own proceedings; though it may rescind or suspend its own proceedings on proper cause shown." In Alabama, in Wright vs. Philips, 56 Ala., 69, it is held that "as a general rule a court of equity will not enjoin its own decrees at the instance of a party or privy, but will leave him to seek his redress by a bill of review under the statute, (Code 3404) or by petition under the rules of Chancery Practice,"

and further, that " when a person seeks to prevent the execution of a decree to which he is not a party on account of matters outside of the issues in the cause, though germain to it, the proper practice ordinarily is to obtain from the court or Chancellor a restraining order to suspend proceedings under the decree, upon proper security being given." The above is, we think, a fair statement of the authorities, to which we have access, in favor of the rule contended for by appellants.

In cases where a party to an absolute and final decree or one standing in privity to him, seeks to review it or restrain its enforcement, the decree having been enrolled, we think it may be done in this State in cases of fraud by an original bill for fraud ; (or bill of review, 2 Otto, 454 ;) or, if there is error in law arising upon the pleadings, proceedings or decrees, a bill of review without leave will lie ; or if there is a discovery of material new matter of fact, such as the party, by the use of reasonable diligence, could not have known, then a bill of review with leave of the court will lie ; and where a final decree has, after a decree *pro confesso*, been enrolled, and twenty days have passed, and such decree becomes final, the defendant may, by motion, under our practice, have the decree opened and a defence upon the merits let in, where he is guilty of no laches and his failure to set up his rights in the time required was occasioned by causes beyond his control, and by obstacles insuperable in their character, and he has a good defence. Stribling vs. Hart, 20 Fla., 235. Bills of review lie only in favor of parties and their privies. Thompson vs. Maxwell, 5 Otto, 391. The cases in 2 Paige and 4 Iredell, are cases brought by parties to the original decree, and are not in point, as the case at bar is by a stranger. In the case in Clarke's Chancery, however, the complainant had assigned mortgages held by him to the company as collaterals for a debt due

the company by him, and proceedings had been instituted foreclosing the mortgages without making him a party.

Although we do not mean to commit this court here to a ruling as to what can be done in a case between parties to a former decree, we find, however, that the New York cases cited are practically overruled by the Court of Appeals as authorities against the power to issue an injunction, in Erie R. Co. vs. Ramsey, 45 N. Y., 637, where it is held that "a court of equity has power by injunction to restrain proceedings in another equitable action in the same court." Of Smith vs. A. L. J. & T. Co., and Lane vs. Clark, (Clarke, 307 and 309,) it is said they "do not hold that there is no jurisdiction to grant an injuntion. They are to the effect that it is not as a general rule a proper mode of obtaining a stay of proceedings." In the same case it is said : "If it be said a court cannot restrain itself, the answer is, a court of equity never sought or claimed to restrain a court at law, but did enjoin the suitors in it." And again, quoting from Willard's Eq., it says : "As an injunction to restrain proceedings at law is directed only to the parties and assumes no superiority over the court in which the action is pending, but is granted solely on the ground that some equitable circumstances exist which render the prosecution at law against conscience, there is no reason why an injunction should not be granted by the court in which the action is pending, if the court has jurisdiction both at law and in equity. * * * But there is not such lack of precedent and authority for the position that a court of equity will entertain a fresh action in it, and in that action join suitors in an action then pending before it. An action of interpleader is such a case. * * * In Warrington vs. Wheaton, (1st Jac,) an injunction was granted to restrain parties to another action in the same court, and this though the objection was made that the same relief could be had

in the original action where the parties were the same. And though the reasons given by the court may be peculiarly of force in that class of cases, still it is shown that in cases demanding it jurisdiction exists, and an injunction may issue in one action to affect the proceedings in any action already pending in the same court." Crawford vs. Fisher, 10 Simon, 479. After alluding to the power of a court of equity to interfere to prevent a multiplicity of suits or to draw to one action cognate questions and interests sought to be litigated, as well as established, it also says: "Nor is it without other precedent that a court of equity may question the proceedings in another court of equity. Thus one court of equity has overhauled the decree of another court for *fraud, contrivance or covin in obtaining it.*"

In Montgomery vs. Whitworth, 1 Tenn. Chan., 174. Chancellor Cooper says: "The American cases holding that an injunction will not lie to restrain a decree in the same court may all be traced back to the rulings cited by Hoffman. Both cases merely decide that an injunction granted by a *master* to stay proceedings in another suit is not authorized." The effect of the rule requiring application to be made in the original cause makes it "necessary for the party aggrieved not merely to set out his case in his bill impeaching the former decree, but to prepare a similar statement in the form of a petition in the original cause, * * two pleadings, precisely the same in substance and only differing in form * * to accomplish the end which ought to be obtained by one proceeding." Speaking of the reasons given in 1 Clark, 307, he says: " But it is not easy to see how this would follow. The injunction in the new suit would be as much under the control of the court as the restraining order in the original suit. And *e contra* the restraining order in the original suit would seem as likely to render it difficult to foresee the termination of litigation

as the injunction in the new suit. This reason will not stand the test of logic." As to the reason of iniquity and wrong given in 4 Iredell, he says: "But if so, would it not equally follow from an order of supersedeas granted on petition in the original cause? What is the distinction between an injunction and a supersedeas, that the dignity of the court should be impeached by the one and not by the other? The truth is the stay of a decree of the same court, upon good cause shown, whether it be by injunction or supersedeas, is upon precisely the same ground that injunctions are often granted to stay proceedings in other courts, namely, that these proceedings are wrongful either by reason of fraud, error of law, apparent or outside facts. The court of chancery is not infallible any more than a court of law, and need not hesitate to correct its own errors by the same means with which it ordinarily undertakes to correct the errors of other courts. The reason given by the North Carolina Court is not more satisfactory than that assigned by the Vice Chancellor of New York." These views strike us as very forcible.

Speaking of the 23d Ordinance of Lord Bacon, which is in these words: "In the case aforesaid where an injunction is to be awarded for stay of suit at common law, if like suit be in chancery, either by *scire facias*, or privilege or English Bill, then the suit is to be stayed by order of the court as it is in other courts by injunction, for that the court cannot enjoin itself;" Chancellor Cooper says: "The Ordinance of Lord Bacon and the decisions of Chancellor Walworth declare the same rule, which is that the restraining order, whether it be by injunction in the new suit or supersedeas in the original, should be warranted by public order made in court. This is all that was decided by Chancellor Walworth in Dyckman vs. Kernochan. It is not the case of the common injunction or such as the master is au-

thorized to grant. The application should be to the court." He then refers to the Tennessee statute giving a Chancellor power to grant an injunction, and says it " has changed the English rule of practice followed by Chancellor Walworth and authorizes the writ to be granted out of court by a Judge or Chancellor." The power of a Circuit Judge in Florida to grant an injunction in vacation is too well established to require comment. See also 3 Tenn. Ch., 502; and Basye vs. Beard's Ex'rs., 12 B. Monroe, 581; 1 John. C. Reports, 401; 8 N. Y., 1.

Judge Manning in Wright vs. Phillips, *supra*, speaking of the quotations made above from Willard's Equity, says they " suggest a good reason why in some instances perhaps a chancellor should not, from a too sensitive idea of unfitness, refuse to perpetually enjoin a party *from carrying into effect a decree* he had rendered in favor of such party. A court of equity upon its being properly shown that it had by *fraud* or imposition been led to make an unjust de- decree would not hesitate to annul it. And if the same effect can be produced by perpetually enjoining the execu- tion of a decree, it may sometimes be allowable for the court which rendered it to do so. Questions of this sort are most likely to arise in cases of bills of review or in the nature thereof." 12 B. Mon., 581. In High on Injunc- tions, §270, it is said that the authorities are " somewhat conflicting and wholly irreconcilable ;" and " upon princi- ple it is difficult to perceive any satisfactory reason why the jurisdiction should not be extended to restraining the enforcement of decrees in chancery upon the same grounds and for like reasons as those which underlie the jurisdic- tion in restraint of the enforcement of judgments at law. * * No higher degree of inviolability is perceived as at- attaching to one judicial determination than the other. In

neither event is the process of injunction directed to the court itself, but only to the parties litigant."

The U. S. Supreme Court, (State of Florida vs. Anderson *et al.*, 91 U. S., 667,) in the exercise of original jurisdiction, enjoined the execution of a decree for the sale of a railroad, which Anderson and other bond holders of the same class had obtained in the U. S. Circuit Court against a railroad company for the sale of the road. The State sued in behalf of itself and the Trustees of the I. I. Fund of Florida. The State and Trustees had, prior to Anderson *et al.*, instituting their said suit, begun a suit in the State court to recover a balance of purchase money due the Trustees for the road, and for which a vendor's lien was claimed, and had made all known parties claiming liens defendants. Afterwards Anderson *et al.*, began their suit in the U. S. Circuit Court against the company and trustees, and claimed that their bonds were still a lien on the road or at least entitled the holders thereof to claim the unpaid purchase money and prayed a sale of the road to pay their demand ; but they dismissed as to the trustees, and under an arrangement with the company obtained a decree declaring the bonds a first lien on the road, and directing a sale of it to pay them. After execution had been issued on the decree and before the bill was filed in the Supreme Court, Anderson *et als.* filed a bill to carry such decree into execution, making the trustees parties and charging them with intent to seize the road, and praying an injunction. The injunction of the U. S. Supreme Court restrained *Anderson et al.*, " from selling or proceeding to sell said railroad and property by virtue of their said decree or any decree supplementary thereto in the same case," but did not profess *to restrain the U. S. Circuit Court.* The proceedings of the bond holders was held under the circumces of the case to be a fraud on the trustees.

We do not think it necessary to make the master a party but are of the opinion that an injunction against the parties complainant in a case like this is sufficient, and that on being served with a copy of such injunction or otherwise duly notified of it he should take no further proceedings.

Where a decree has been obtained and is charged to be a fraud, as in the case at bar, and the transactions upon which it is based are set up and charged to be, with the decree, fraudulent contrivances to protect the property of the defendants from debts, and a sale of the property covered by such alleged fraudulent decree is about to take place, we see no satisfactory reason why the creditor seeking to reach the debtor's property should not, he being no party to the other proceedings, have an injunction from the same court which rendered the decree to restrain the sale, which must, if made, lead to further complication, particularly if new parties purchase. None of the reasons alleged against the practice strike us as good in such a case, and we think the petition in the same court in the original· cause cumbersome and unnecessary.

V. The fifth point is, the bill does not allege that the complainant has exhausted the remedy under its execution by levy or attempted levy on trust property or other property of defendants.

(a.) In Barrow vs. Bailey, 5 Fla., 9, the doctrine laid down is that " if a creditor seek the aid of a court of equity against the real estate of his debtor he must show a judgment at law creating a lien upon such estate ; and if he seeks such aid in regard to personal property he must show an execution sued out and pursued to every available extent." In Mississippi, Wisconsin, Alabama and Illinois the requirement as to reaching real estate is the same as that prescribed in the above case. Vasser vs. Henderson, 40 Miss., 519 ; Cornell vs. Radway, 22 Wis., 260; Dargan

vs. Waring, 11 Ala., 988; Wightman vs. Hatch, 17 Ill.,, 281. See also Bump on Fraudulent Conveyances, 522. In Maine, whose decisions are referred to as requiring further proceedings by a judgment creditor, a judgment is not a lien on real estate, but there must be a levy of an execution to create it. Dana vs. Haskell, 41 Maine, 25. In New York, the decisions are not easily reconcilable. Brinkerhoff vs. Brown, 4 Johnson Ch. R., lays down the rule announced in Barrow vs. Bailey. 54 N. Y., 129, does not require the return of an execution, but only judgment and issue of execution, which we have here.

(*b.*) What we have said above as to what is necessary to enable a creditor to pursue real estate in equity is applicable only to such as the debtor has held the legal title to, and not to such as is deemed equitable assets. Where one purchases land and has the title made to his wife in fraud of his creditors it is deemed an equitable and not a legal asset, and, though this is done to hinder, delay and defraud creditors, it is considered by at least some of the courts not to be within the Statute of Frauds, still equity will subject the property to the payment of his debts. Carlisle vs. Findell, 49 Miss., 229; Gowing vs. Rich, 1 Iredell, 553. The interest of the debtor in such a case cannot be sold on execution at law. There has never been any legal title in him for the judgment lien to take hold of or the execution to operate on, as in the case where he has had such title and conveyed it fraudulently; in which case equity regards the conveyance as inoperative on account of the fraud. The ordinary and well established rule is that before a creditor can resort to equity in pursuit of such an equitable asset in aid of an execution he must have pursued his legal remedies to every available extent, and have a return of his execution *nulla bona.* The creditor's right to relief in such a case, *i. e.*, the property being such that it cannot be taken on execution

at law, depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction, and the best if not the only evidence of this, is the actual return of an execution unsatisfied. The principles above announced are supported by the following authorities: Freeman on Judgments, 348 ; Jones vs. Green *et al.*, 1 Wall., 330 ; Carlisle vs. Tindell, 49 Miss., 229 ; Gowing vs. Rich, 1 Iredell, 553 ; Page vs. Goodman, 8 Iredell, (Eq.,) 16 ; Howe vs. Bishop, 3 Metcalf, 26 ; Webster vs. Folsom, 58 Maine, 230 ; Low vs. Marco, 49 Maine, 45 ; Gray vs. Faris, 7 Yerger, 154; Haggerty vs. Nixon, 26 N. J., (Eq.,) 42 ; Hyde vs. Chapman, 33 Wis., 391 ; McDowell vs. Cochran, 11 Ill., 31 ; Tyler vs. Peath, 8 Mich., 63 ; Clarkson vs. De-Peyster, 3 Paige, 320 ; Beek vs. Burdette, 1 Paige, 305 ; Miller vs. Davidson, 3 Gilman, 518 ; 54 N. Y., 128, 129.

(*c.*) In view of the allegations of the bill, and particularly as this is not simply a case of a purely *voluntary* conveyance, we do not think there is, in so far as the bill seeks to reach lands of which the legal title has been in Robinson, anything in the argument that it is not shown that there is no other property of defendants to be levied on. Fox vs. Moyer, 54 N. Y., 131; Bump on Fraudulent Conveyances, 539.

In Vasser vs. Henderson, *supra*, it is held that conveyances made to hinder and defraud creditors are declared by the Statute of Frauds to be " clearly and utterly void " as against creditors affected by them, and "the right of the judgment creditor to levy his execution upon property so conveyed, and to proceed at law to subject it to sale cannot be denied, without any reference to the question whether the debtor possesses other property or whether there are other defendants having property liable to the same judgment. In other words, it is not necessary in order to justify the levy of an execution upon property fraudulently conveyed

that the plaintiff should show or the fact exist, that neither the party who has made such conveyance, nor his co-defendants in judgment have other property upon which a levy can be made. We do not mean to say that every voluntary conveyance is a fraudulent one within the meaning of the statute. The plaintiff making a levy on property undertakes to show that upon the circumstances of the particular case the transaction is one which the law will not sanction. In Wightman vs. Hatch, *supra*, it is held that " a party has a right to the same remedies to enforce the collection of a decree in equity for a specific sum of money that he has to enforce a judgment at law, and he may remove fraudulent conveyances out of the way of his execution ; and a bill may be filed to remove fraudulent incumbrances or conveyances as soon as the judgment is obtained without proceeding to obtain satisfaction out of other property."

(*d.*) What we have said can be easily applied to the facts of this case. As to all the real estate of which the legal title has been in Robinson we think the bill sufficient, but as to such as the title of has not been in him but was conveyed directly to Mrs. Robinson, we do not think the bill shows a sufficient exhaustion of legal remedies.

We have not failed to consider the case of Case vs. Beauregard, 101 U. S. ; Hayden vs. Thrasher, 18 Fla., and West vs. Chasten, 12 Fla., and other cases where the equitable jurisdiction was founded upon a partnership lien or other ground of such jurisdiction independent of an exhaustion of legal remedies.

VI. The sixth point is that the bill has been dismissed by the clerk as to Mitchell, and therefore no decree can be pronounced against C. L. Robinson alone, it being urged by appellants that the note was a joint note, and the decree against them jointly. This is not a ground of demurrer,

and we do not think the effect of this order can be properly passed on at this hearing, particularly as the question was not raised in the Circuit Court. Neither Mitchell nor the complainant below having appealed, we do not think we should pass on the legality of the order.

VII. The seventh ground is that the bill is multifarious. This objection only applies where a complainant claims several matters of different natures by the same bill, and where one general right only is claimed the demurrer will not hold even though the defendants have separate and distinct interests: as where a person claiming a general right to the sole fishery of a river files a bill against a number of persons claiming several rights in the fishery as lords of the manor, occupiers of lands, or otherwise. 1 Daniel Chancery Pleading and Practice, 341, m. p. In Hayden vs. Thrasher, 18 Fla., 795, it is held that a bill in the nature of a creditor's bill is not multifarious because it prays discovery and relief against several who are not united in interest and who may be strangers to each other, as the object of the bill is to reach sundry assets of the principal defendants in their several possessions. Dummock vs. Bixby, 20 Pick., 368 ; Sears vs. Carrier, 4 Allen, 339, 341 ; Tucker vs. Tucker, 29 Mo., 350. Sears vs. Carrier was a bill to enjoin one Carrier, who was alleged to have obtained fraudulently from Sears' intestate four promissory notes, from collecting them. The notes were each made by a different promissor, and all the promissors were made parties to restrain them from paying. The bill was claimed to be multifarious because they were distinct contracts made with distinct parties who had no connection with each other, yet the court said : " But as to Carrier, the plaintiff has the right to join all these claims in one suit. He is not obliged to bring a separate bill against him for each of the notes. The makers of the notes are rightly joined as parties on ac-

count of their relations to Carrier, and so the bill is not multifarious." Where the judgment is joint, and separate conveyances are made by each of the debtors, all the grantees may be united. Bump on Fraudulent Conveyances, 537; Planter's Bank vs. Walker, 7 Ala., 926; Daniel's Chancery Pleading and Practice, 339, note 1.

The conveyances and mortgage specifically enumerated, and alleged to be fraudulent, are all either to Mrs. Robinson directly, or to another in trust for her, and the main or one purpose of the bill is to reach them, and the right to do so is "one general right." The authorities cited go much further than is required to sustain the bill as to these features of it against this objection, but there is a feature which we think subjects the bill to objection. The stating part and prayer of the bill show that one purpose of the bill is to relieve land of which the complainant claims to be the owner, of the cloud which a sale by the master, Marcy, will, and which the decree under which he acts, does cast upon it. This we do not think can be held to be within the general right claimed by the other features of the bill: the former right is that of a creditor to have payment of his debt; the latter is that of one claiming to be the owner of property to have a cloud removed and a sale prevented, and is of a different nature, though it arises out of the same transaction as the alleged fraudulent mortgage and decree do. Daniel's Chancery Pleading and Practice, 343, 344. It is, however, only in so far as the bill claims relief as to the land owned by the plaintiff that it is objectionable, for, as indicated above, the mortgage and decree, in so far as they are alleged to be an obstacle to the collection of complainant's debt, or affect property of Robinson and Mitchell, or either, are within the general right claimed by the complainant. Attorney-General vs. Merchant Tailors' Co., 1 M. & K., 189; Newland vs. Rogers, 3 Bar.

Chan. R., 433. Under Chancery Rule 52, this defect may be cured by amendment. The rule as to multifariousness in a case like this, is one very much of convenience. We think it better practice that the demurrer on this ground should be sustained with leave to the complainant to amend.

VIII. The eighth point urged is that the claim is "barred by laches and the statute of limitations—the deeds sought to be cancelled having been made ten years ago."

A careful reading of the bill will disclose that the case it makes is not one of mere voluntary conveyances, in which the complainant seeks to subject the property merely because Robinson's money paid for the property where it was conveyed by another to Mrs. Robinson, and because the conveyances made by him or him and Mitchell were without consideration. There is a full statement of specific fraudulent acts, and besides, the property is alleged to be in fact still Robinson's property, and the title of the alleged fraudulent grantees is alleged to be, " so far as it is vested in them, in trust for him," and the property in Mrs. R's. name is alleged to have been not only paid for by R. or conveyed by him without consideration, but the several transactions are alleged to have been to defraud Bostwick and wife and other creditors, and it is further alleged that R. has asserted the entire and exclusive management and control of the property so fraudulently conveyed, negotiated the purchase and sale thereof, paid taxes and dealt in all respects with said land as his own property except that for his own fraudulent ends he has used the names of his wife and Miss Foss and Seymour to conceal and cover the title from his creditors. It cannot be said that the bill is one of mere allegations imputing motives of fraud. The particular manner in which the acts have been done, and the par-

ticular end and design sought to be accomplished, are fully set forth in the bill, and are admitted by the demurrer. We do not see what difference it makes that the deeds were made ten years ago if it be true that the lands are still Robinson's in fact, and that in so far as vested in others it is in trust for him, although vested or attempted to be vested to defraud creditors, and further true that he has dealt with them in every respect as his own property, "except for his own fraudulent ends he has used the name of" others "to conceal and cover the title from his creditors." The continuation of practices for such fraudulent ends of however long continuance is, under the statement of the bill, nothing but an attempted concealment of the legal title to that which the demurrer admits to be Robinson's property. We do not think that such use by one of the names of others can of itself create any right in such others, or in the one to say to the creditors that they shall not have such property applied to the debts of its present real owner on a decree whose validity is settled, and of but four years standing. If there be facts and circumstances making the claim stale they can be brought out by the proper pleading, but we do not think, taking the bill in all its allegations, that there is staleness or laches shown by it.

IX. Although there is ground for equitable relief in the bill, and the demurrer is general, yet as the bill is multifarious, the demurrer should have been sustained.

The order overruling the demurrer is reversed and the case is remanded for further proceedings, not inconsistent with this opinion.